CONTINENTAL OIL COMPANY v CITIZENS TRUST & SAVINGS BANK

1. SECURED TRANSACTIONS—FINANCING STATEMENTS—ACCOUNTS RECEIVABLE—DEBTOR'S CHANGE OF NAME—NECESSITY FOR REFILING—UNIFORM COMMERCIAL CODE—CUSTOMS OF COMMERCIAL WORLD.

   A defendant secured creditor was under no obligation, in order to maintain a valid perfected security interest, to refile a financing statement evidencing his security interest in a debtor's accounts receivable, after the debtor underwent a substantial change of name, where the financing statement was complete and accurate in its entirety at the time of the original filing; neither the Uniform Commercial Code nor the prevailing custom and usage of the commercial world require a refiling.

2. SECURED TRANSACTIONS—FINANCING STATEMENTS—ACCOUNTS RECEIVABLE—FUTURE ACCOUNTS—NECESSITY FOR REFILING—UNIFORM COMMERCIAL CODE.

   A creditor who files a financing statement covering the accounts receivable of a debtor perfects a security interest in the debtor's future accounts receivable as well as the debtor's accounts receivable then existing; under the section of the Uniform Commercial Code covering financing statements and their filing, subsequent filings to cover future accounts within the collateral described are not required (MCLA 440.9402).

Appeal from Van Buren, David Anderson, Jr., J. Submitted Division 3 October 8, 1974, at Grand Rapids. (Docket No. 18595.) Decided November 27, 1974. Leave to appeal granted, 394 Mich —.

Complaint by Continental Oil Company against

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 69 Am Jur 2d, Secured Transactions § 390.

Construction and effect of UCC Art 9, dealing with secured transactions, sales of accounts, contract rights, and chattel paper. 30 ALR3d 9.

Citizens Trust & Savings Bank for conversion of property in which both parties held a security interest. Summary judgment for defendant. Plaintiff appeals. Affirmed.

*Fisher, Troff & Fisher* (by *David J. Williams*), for plaintiff.

*Neal, Grier, Schutt, Hanson & Hanson,* for defendant.

Before: ALLEN, P. J., and J. H. GILLIS and McGREGOR, JJ.

ALLEN, P. J. On November 8, 1972, summary judgment was entered against plaintiff-appellant Continental Oil Company and in favor of defendant-appellee Citizens Trust & Savings Bank on the grounds that the latter's lien and interest in a certain sum of money was superior and prior to that of Continental's. On October 17, 1973, judgment was entered denying plaintiff's motion for rehearing, and plaintiffs have filed a timely claim of appeal.

Previous to June 1966, a company known as South Haven Fruit Exchange, hereinafter referred to as debtor, was doing business as a farmers' cooperative in the city of South Haven, Van Buren County. In May of 1964, debtor granted Citizens Trust & Savings Bank a security interest in its inventory, "whether now owned, or hereafter acquired * * * ". Also, debtor assigned to Citizens, for the purpose of securing a loan from Citizens to debtor, all of debtor's book accounts, notes receivable, all money due under any contracts entered into by debtor:

"together with all future book accounts, notes receiva-

ble, and all moneys payable thereon, and amounts due under any contracts entered into by the assignor, that may be or hereafter become due or owing to the assignor from any corporation, person or persons."

The financing statement covering "all the accounts receivable and inventory of South Haven Fruit Exchange" was filed in the Van Buren County Register of Deeds office May 19, 1964. A financing statement covering the same collateral was filed with the Secretary of State, in Lansing, in June of 1964. The "proceeds box", although not checked in the former, was checked in the latter. See MCLA 440.9402; MSA 19.9402-form 1.

In June of 1966, debtor amended its articles of incorporation and changed its corporate name to Blossom Trail Growers, Inc. In June of 1966, debtor filed a copy of the amendment to its articles of incorporation with the Michigan Department of Commerce, and in September of 1966, filed the same with the Van Buren County Clerk.

In the meantime, Citizens Trust & Savings Bank did not amend its financing statements to reflect the change of its debtor's name. On January 9, 1968, Continental Oil Company, through a subsidiary, Agrico Chemical Company, entered into an agreement with Blossom Trail Growers, Inc. Agrico was to provide Blossom with its products, and Blossom was to act as a retailer of the same. On or about the same day, plaintiff and Blossom executed a security agreement, in which it was stated "the collateral of this Security Agreement is all present and future inventory of Debtor * * * and all proceeds, including accounts receivable, notes receivable * * * from sale, or disposition".

On January 14, 1968, plaintiff filed a financing statement in the UCC unit of the Secretary of State's office in Lansing. This statement covered

all of Blossom's present and future inventory, and the "proceeds" and "products" boxes were checked.

Between December of 1967 and July of 1968, plaintiff sold to Blossom certain plant food inventory, and an account was created between plaintiff and Blossom, allegedly in the amount of $12,229.84. In its complaint for conversion, plaintiff alleged that Citizens had collected proceeds from sales made by Blossom, and that Citizens had within its possession certain open accounts representing the proceeds of plaintiff's collateral, and plaintiffs prayed for judgment in the amount of $10,777.15.

Sometime in 1969, debtor, Blossom Trail Growers, Inc., filed a voluntary petition in bankruptcy. Shortly thereafter, Citizens Bank, in which debtor had deposited certain proceeds and to which it had turned over its accounts and notes receivable, set off the amount of the debtor's unpaid debt which arose from the May, 1964 contract discussed above.

Above are the transactions which led to plaintiff's suit for conversion and subsequent motion for summary judgment on the ground that defendant had failed to state a valid defense and that there was no genuine issue as to any material fact. GCR 1963, 117.2(2) and (3). Exercising its authority under GCR 1963, 117.3, the trial court rendered summary judgment in favor of defendant subsequent to the August 30, 1971 hearing on plaintiff's motion.

Plaintiff's allegations are that the prior secured party, Citizens Trust & Savings Bank, had an affirmative duty to refile the financing statement when the debtor changed its name, that by filing a change of corporate name the debtor did not put plaintiff on constructive notice of the change, and that the description of the collateral as "all ac-

counts receivable" in the financing statement failed to cover future accounts receivable, namely those in which plaintiff claimed an interest.[1]

According to MCLA 440.9402(1); MSA 19.9402(1), which is the applicable section of the Uniform Commercial Code adopted by Michigan, a financing statement must identify the debtor. These statements are filed in the proper filing office and indexed pursuant to the debtor's name. MCLA 440.9403(4); MSA 19.9403(4). One attempting to determine whether or not a particular debtor is involved in another financing arrangement may receive from the filing officer a certificate showing whether there is "any presently effective financing statement naming a particular debtor * * * ". MCLA 440.9407(2); MSA 19.9407(2). Thus, it is quite evident that the debtor's name is an important item in the financing statement and in the filing system. The issue before us is whether or not defendant, the first secured creditor, had the duty to refile a financing statement reflecting the change of names from South Haven Fruit Exchange to Blossom Trail Growers, Inc.

According to section MCLA 440.9402(5); MSA 19.9402(5) of the Uniform Commercial Code:

"A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."

In response to plaintiff's claim that a new financing statement had to be filed to reflect the name change, defendant initially responds with the above "substantial compliance" rule, and in partic-

---

[1] In its brief, plaintiff also claimed that the financing statement filed by defendant with the Secretary of State lacked a signature, but on oral argument acknowledged that a properly signed financing statement had been filed.

ular has referred the court to what has popularly become known as the "Cozy Kitchen" case, *National Cash Register Co v Firestone & Co, Inc,* 346 Mass 255, 259–260; 191 NE2d 471, 474 (1963). In that case, the individual debtor did business as the Kozy Kitchen. However, the financing statement at issue described the debtor in his individual capacity doing business as Cozy Kitchen. The court referred to the above section of the Uniform Commercial Code, noted that the name of the individual debtor, Carroll, had been correctly given and that the statement was correctly indexed under "C" and said that the minor error in the misspelling of Kozy as Cozy was one which was not "seriously misleading". In the instant case, we note at the outset that a minor misspelling is not involved, nor is there an individual debtor whose name was correctly noted and whose assumed name had only been misspelled in a minor manner.

The instant case is also quite unlike the situation in which the debtor's name, although misspelled in the initial filing, was "phonetically similar" to the debtor's real name, and where the name used in the financing statement was actually the debtor's "adopted and publicly accepted name". *In re Gustafson,* 14 UCC Rptr 231, 235–236 (WD Okla, 1973). Previous to its decision, *Gustafson, supra,* noted that the Uniform Commercial Code "envisions a practical, workable arrangement for the market place, not a system conceived or enforced in an unrealistic spirit". 14 UCC Rptr 231, 234.

The instant case also is unlike *In re Kann,* 6 UCC Rptr 622, 631 (ED Pa, 1969), in which the financing statement was filed under the debtor's unregistered trade name although four days previ-

ous to the execution of the security agreement they had changed that name. The court there noted that there was no allegation or proof that any of the parties involved therein were misled by the indexing of the debtor's name under the previous trade name. Such was not the case here, as plaintiff, seeking information for Blossom Trail Growers, Inc., would certainly not locate a previous filing under South Haven Fruit Exchange, and plaintiff does assert that it was misled.

*In re Thomas,* 466 F2d 51, 53, fn 3 (CA 9, 1972) noted a number of decisions which held that if the debtor's name on the financing statement "is materially different from the debtor's real name, the filing is fatally defective" but where the name on the financing statement is only "slightly different from the debtor's real name", "substantial compliance" is found "because an interested party searching the record would be placed on inquiry by such an entry". *Thomas, supra,* involved a situation in which the debtor's trade name, West Coast Avionics, was used in the financing statement rather than the debtor's real name, Burris Haley Thomas. The court rejected the "minor error" argument, and noted that if a potential creditor had searched the index under "Thomas", he would find no notice of the previous security interest because that financing statement had been filed under West Coast Avionics. Thus, the secured creditor who failed to file a financing statement giving the proper name as required by UCC 9-402 (in Michigan, MCLA 440.9402; MSA 19.9402) was found not to have substantially complied with the statutory requirement and its financing statement was found to be fatally defective. 466 F2d 51, 52–53.[2]

---

[2] See also *Burnett v HOU Corp* 503 F2d 1218 (CA 6, 1974), 43 USLW 1061, 2163 (October 9, 1974).

The above cases, unlike the instant case, involve situations where the financing statement is claimed to be erroneous *ab initio.* Were this an *ab initio* situation we would clearly have to find the names misleading. But since this is not such a situation, and in fact the financing statement was entirely proper when filed, we turn our attention to the main issue of whether the defendant was under an obligation to refile after the debtor made so substantial a change in name. We hold not.

To begin with, we first note that there is no specific requirement in any section of the UCC that a secured party refile a financing statement to reflect the debtor's change of names. In fact, the drafters of Article 9 have proposed an amendment to § 9-402 which, in proposed (7) would state:

"Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed before the expiration of that time." UCC Rptr, Current Materials, Uniform Code, Appendix-Article 9, Revised Article 9 of the Uniform Commercial Code (1972), pp 130, 131.

This change is proposed to provide guidelines when name change occurs "with the result that a filed financing statement might become seriously misleading". UCC Rptr, Current Materials, Uniform Code, Appendix-Article 9, Revised Article 9 of the Uniform Commercial Code (1972), 1972 Comment to § 9-402, p 135. The very fact that this amendment is proposed is recognition that custom and usage of the current commercial world do not require a refiling. Defendant, as part of the com-

mercial marketplace, is reasonably entitled to rely upon the prevailing practice and, until the legislature changes the law, should not be required to do that which was not the practice of the marketplace. *In re Pasco Sales Co, Inc,* 77 Misc 2d 724; 354 NYS2d 402, 404–405 (1974), a case very similar to the one before us, discussed this issue. There, a local bank made a loan to Pacific Supply Co, Division of P.S.C. Products Corp, taking as security all of the corporation's inventory. The security agreement was properly filed. Later, the corporation changed its name to Pasco Sales Company Inc., and some two and one-half years later filed an assignment for the benefit of creditors. The creditors claimed their assignment took precedence over the bank's because of the bank's failure to file a new financing statement under the debtor's new name. After reciting the proposed amendment to the Uniform Commercial Code, the same being identical to the language cited above in this opinion, the court said:

"The question of whether a change in the name of the debtor affects the perfection of a security interest filed under the former name is apparently one of first impression in this state.

\* \* \*

"A proposed amendment to the Official Text of section 9-402, which deals with the formal requisites of financing statements, provides: (Same provision as above quoted.)

\* \* \*

"In states like New York which have not adopted the amended section of the Code 'the change of name does not affect the perfection of the filing made under the former name and consequently no filing is necessary because of the change of name.' (4 Anderson, Uniform Commercial Code, § 9-402:17.) This is so regardless of whether the secured party had knowledge of the change

of name. *(In re GAC,* 11 UCC Rptr 412 [WD Mich, 1972]."

Importantly for our purposes the court came to the above conclusion even though the new corporate name was substantially different than the original name and even though the bank may have had knowledge of the change.

Other cases dealing directly with the issue have come to the same conclusion despite the fact the new name differed materially from the name filed. *In re GAC,* 11 UCC Rptr 412, 413–415 (WD Mich, 1972), a decision by a bankruptcy referee, held that the secured party did not have a duty to file a new financing statement to reflect the name change of the debtor, a woman who after entering into a security agreement obtained a divorce and returned to her former name. The referee referred to sections of the UCC which require an interested party to determine all the places where the debtor had previously done business or resided "during the life of the collateral in question", MCLA 440.9401(3); MSA 19.9401(3), and said, "To inquire of any change of name during a like period, especially of a woman, is no greater burden".

In 69 Am Jur 2d, Secured Transactions, § 390, pp 235, 236, it is stated:

"Where the debtor changes his trade name after an original filing, it has been held not necessary to refile in the new name."

In the case of *In re McCoy,* 330 F Supp 533 (D Kan, 1971), a financial statement was properly filed in 1967 under the name of "Carl L. McCoy, Jr., d/b/a McCoy Furniture and Appliance" and giving the then proper address. Subsequent thereto

the place of business burned and McCoy moved a few doors away. Some two years later he again moved and began to operate under the name "McCoy's Discount Furniture Warehouse" until filing a petition in bankruptcy in October, 1971. The creditors in bankruptcy claimed that the 1967 security on inventory was invalid because the secured creditor had failed to file a new statement. The court rejected this argument, holding that it was not necessary to file a new statement since an inquiry to the Secretary of State's office to search under the name of McCoy would reasonably have led to finding of the original statement. This case, admittedly less convincing than *Pasco, supra,* nevertheless reflects the present judicial posture of not requiring a new filing in the absence of the proposed statutory change. This same attitude appears in *In re The Grape Arbor Inc,* 6 UCC Rptr 632, 633 (ED Pa, 1969), where the court rejected the argument that the secured party had a duty to refile a financing statement. The original statement filed when the loan was made was Philadelphia Eating Society, Inc., but six days later the debtor changed its name to The Grape Arbor, Inc. The court said:

"I find no provision in the Uniform Commercial Code for rerecording a perfected security interest when the debtor effects a change of name. This is especially true if the secured party has no knowledge of that change."

While appellant argues this case is distinguishable because the secured creditor in the case before us has admitted knowledge of the change of name, we interpret the language cited above to mean that the court would have reached the same result even if the secured creditor had knowledge of the change. The first sentence quoted above is control-

ling and the second sentence is merely a reinforcement thereof.

The recent decision of the 6th Circuit Court of Appeals in *Burnett v HOU Corp,* 503 F2d 1218 (CA 6, 1974), reinforces our conclusions in the instant case. At the time the security agreement was filed, each party knew the other intended to change its name in the near future and also knew what the new name would be. The debtor was to change its name from Roman Industrial Corporation to Kalamazoo Steel Process, Inc. The trustee in bankruptcy ruled that the creditor should have refiled after the debtor changed its name. The Federal District Court found that to require such a refiling amounted to "judicial revision". On appeal, the United States Court of Appeals reversed, taking care to limit its decision to a situation where the secured creditor at the time of the execution of the security agreement knew that the debtor would change its name to a particular name. The court said:

> "We do not have a case now before us requiring a determination of the responsibilities of a secured party where he learns of a name change at a later date." 503 F2d 1218, 1222.

We perceive this case to fall within the *ab initio* cases cited earlier and infer, from the limiting language used, that had the situation involved a change of name not known when the security agreement was prepared, the court would have agreed with the district court.

Finally, appellant urges reversal on the grounds that the financing statement covered only then-existing accounts receivable rather than those *in futuro.* In support of this position, appellant relies

on *DuBay v Williams,* 417 F2d 1277 (CA 9, 1969). *DuBay* is inapplicable because it pertains to a security agreement rather than a financing statement. Financing statements are covered by the UCC section MCLA 440.9402; MSA 19.9402. Paragraph two of the official UCC comment to this section states that the code does not require subsequent filings to cover future accounts within the collateral described. The accompanying Practice Commentary is even more explicit on this point:

"The notice filing concept greatly simplifies 'floating lien' financing of inventory, accounts, etc. The filing of a financing statement covering the collateral and proceeds perfects the security interest in all collateral and proceeds as it flows through the debtor's hands without more. It is not necessary to police the collateral nor to execute subsequent papers as the collateral moves through the debtor's hands in order to have a valid perfected security interest." See Practice Commentary following MCLA 440.9402.

Our resolution of the issues makes it unnecessary for us to determine whether plaintiff should be determined to have had constructive knowledge of the change in name by reason of the filing with the Secretary of State and the Van Buren County Clerk. We assume plaintiff did not. As a realistic matter we do observe that in a community as small as South Haven the slightest investigation would quickly have revealed that the well-known farmer's market down the street was conducting business under the name Blossom Trail Growers, Inc. Apparently plaintiff, preparatory to making its loan, did not bother to check.

Affirmed, costs to defendant.

All concurred.