ELY, Circuit Judge:
 

 B. J. Holmes Sales Company, Inc. appeals an Order of the bankruptcy court, affirmed by the District Court, denying priority of its lien against the accounts receivable of the debtor, West Coast Food Sales, Inc.
 

 On January 9, 1973, John B. Granahan, doing business as West Coast Sales Company (the proprietorship), executed an agreement giving a creditor, B. J. Holmes Sales Company, Inc., a security interest in the firm’s accounts receivable. A financing statement listing the debtor as “West Coast Sales Company” was filed with the California Secretary of State. On April 1, 1973, a newly formed entity, West Coast Food Sales, Inc. (the corporation) succeeded to the assets and liabilities of West Coast Sales Company. Holmes continued to extend credit to West Coast Food Sales, Inc. until that corporation filed for voluntary bankruptcy on June 1, 1977.
 

 Holmes has asserted a priority lien against the accounts receivable of the bankrupt corporation pursuant to the January 9, 1973 security agreement, which contained a “successors and assigns” clause purporting to bind “any corporation or other business entity to which the proprietorship’s business might be transferred.” The trustee has opposed assertion of the priority lien on the grounds that it is ineffective against the accounts receivable, all of which accrued
 
 after
 
 the incorporation of West Coast Food Sales, Inc. on April 1, 1973.
 

 The opinion of the bankruptcy court, affirmed by the District Court, held that Holmes was unable to assert its priority lien against the accounts receivable held by the trustee because the corporation had executed no security agreement in favor of Holmes as required by Cal.Com.Code § 9101
 
 et seq.
 
 (West 1979). The bankruptcy court held that the “successors and assigns” clause in the security agreement did not bind the corporation because Holmes only sought to assert a priority lien in accounts receivable accrued after the change in entity status, and not in accounts receivable transferred to the corporation from the proprietorship.
 

 The California version of the Uniform Commercial Code, however, provides that after-acquired assets of a debtor can be collateral for an antecedent debt, Cal. Com.Code § 9108 and 9204 (West 1979), and that a security agreement continues to be effective against transferees of the original debtor, Cal.Com.Code §§ 9302, 9306, and 9318 (West 1979). The Code, however, does not provide direct guidance on the question which the bankruptcy court found disposi-tive, whether the security agreement extends to assets acquired by the debtor after it has changed its name or structure. No California case has raised this issue, but other jurisdictions which have enacted similar versions of the Uniform Commercial Code have allowed a security interest to be asserted against the assets of a successor entity acquired after that organization came into existence.
 
 See Siljeg v. National Bank of Commerce of Seattle,
 
 509 F.2d 1009 (9th Cir. 1975) (summary judgment precluded on issue of whether security interest continued to be effective as to subsequently-accrued accounts receivable);
 
 American Heritage Bank & Trust Co. v. O. & E., Inc.,
 
 40 Colo.App. 306, 576 P.2d 566 (1978) (subsequently-acquired property);
 
 Fliegel v. Associates Capital Co.,
 
 272 Or. 434, 537 P.2d 1144 (1975) (subsequently-acquired inventory);
 
 Inter Mountain Association of Credit
 
 
 *709
 

 Men v. Villager, Inc.,
 
 527 P.2d 664 (Utah 1974) (subsequently-acquired inventory);
 
 Continental Oil Co. v. Citizens Trust and Savings Bank,
 
 57 Mich.App. 1, 225 N.W.2d 209 (1974),
 
 aff’d,
 
 397 Mich. 203, 244 N.W.2d 243 (1976) (subsequently-accrued accounts receivable);
 
 In re Pasco Sales Co.,
 
 77 Misc.2d 724, 354 N.Y.S.2d 402 (S.Ct.1974) (subsequently-acquired inventory);
 
 Ryan v. Rolland,
 
 434 F.2d 353 (10th Cir. 1970) (subsequently-acquired inventory).
 

 The
 
 Siljeg, Continental Oil,
 
 and
 
 Pasco Sales
 
 cases are distinguishable because they did not involve a change in the internal structure of the debtor entity, but merely an identity or name change. The courts in those decisions did not directly consider the issue which was dispositive in the bankruptcy court below, the existence or non-existence of a valid security agreement between the successor entity and the creditor. Those cases presumed the continued validity of the underlying security agreement, and focused instead on the separate but related issue of the adequacy of the financing statement to put potential creditors on notice of the lien against the assets of the successor debtor.
 

 The
 
 Fliegel
 
 and
 
 Ryan
 
 cases involved a fact pattern analogous to the instant appeal, the change in the debtor’s status from a partnership to a corporation. The facts of
 
 Inter Mountain
 
 were also similar, arising from a corporate merger in which the original debtor was absorbed into a successor corporation.
 
 American Heritage,
 
 though rendered in the context of a name change, also considered the underlying validity of the security agreement.
 

 In each of these four decisions, the courts directly confronted the issue of the continued adequacy of the security agreement to bind the successor entity, and each of those courts implicitly concluded that the agreement continued to be effective even as to assets acquired
 
 after
 
 the change in the debtor’s structure or legal status. “A debt- or cannot destroy the perfected security interest of a secured party by merely changing its name or corporate structure .... ”
 
 Inter Mountain,
 
 527 P.2d at 671.
 

 The bankruptcy court considered and rejected the holding of
 
 Fliegel.
 
 It is undisputed by the parties, however, that the business was operated similarly before and after the incorporation. Ownership at all times remained vested in Granahan and his immediate family. If we should adopt the analysis of the bankruptcy court, a debtor would be able to evade the obligations of a validly executed security agreement by the simple expedient of an alteration in its business structure. We conclude as a matter of law that the security agreement executed by the proprietorship continued to be effective as to the accounts receivable generated by the corporation after the change in entity status.
 

 Because we have determined that Holmes’ priority lien embraced the accounts receivable of the debtor corporation, it is necessary to consider the trustee’s argument that the financing statement did not meet the requirements of Cal.Com.Code § 9402 (West 1980) in that it failed adequately to identify the debtor. The trustee contends that the difference between the name of the corporation, “West Coast Food Sales, Inc.,” and the name under which the financing statement was filed, that of the proprietorship “West Coast Sales Company,” made the statement “seriously misleading.”
 

 Sections 9402(6) and (7),
 
 [1]
 
 the relevant provisions governing the “seriously misleading” issue, provide that:
 

 (6) A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or names of partners.
 
 Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seri
 
 
 *710
 

 ously misleading,
 
 the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement or an appropriate amendment to the filed financing statement is filed before the acquisition of the collateral by the debtor. A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer.
 

 (7) A financing statement
 
 substantially complying
 
 with the requirements of this section is effective even though it contains minor errors which are
 
 not seriously misleading.
 
 [Emphasis added].
 

 The “seriously misleading” question is a factual inquiry and should be determined by the bankruptcy court. The summary judgment in favor of West Coast Food Sales, Inc. is VACATED, and the cause is remanded for further proceedings consistent with this opinion.
 

 [1]
 

 . The amendments to § 9402, adopted by the California Legislature at the 1973-1974 Regular Session, became effective January 1, 1976, and govern the dispute here. Cal.Com.Code §§ 11103, 11108 (West 1980).