**In the Matter of WEST COAST COMPUTER SERVICES, Bankrupt.**

**George T. HADLEY, Trustee, Plaintiff,**

**v.**

**DATA DYNAMICS, INC., Defendant.**

**Bankruptcy No. 79–644.**

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

Feb. 8, 1982.

Jary C. Nixon, Tampa, Fla., for plaintiff.

Malka Isaak, Tampa, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS IS a pre-Code case and the matter under consideration is an amended complaint, filed by George T. Hadley, the Trustee in Bankruptcy for the Bankrupt, West Coast Computer Services, Inc. The Trustee, pursuant to Sec. 70(c) of the Bankruptcy Act, seeks to invalidate a lien of the Defendant, Data Dynamics, Inc. upon certain items of property alleged to be property of the Bankrupt. The complaint also seeks to compel a turnover of the same property.

The facts as they appear from the record are as follows:

On July 24, 1976, Guy Gardner, individually as Buyer, Mass Property Appraisal, Inc. (MPA), as Seller, and Data Dynamics, Inc. (Data Dynamics), entered into an agreement for the sale of the business of MPA. At the time of this transaction, MPA was a wholly-owned subsidiary of Data Dynamics. The sale included the following assets: a mass property appraisal system consisting of computer tapes, program listings, decks and input formats; the name "Mass Property Appraisal" and its companion goodwill; and the Seller's right, title and interest in certain contracts. Under paragraph 8 of this agreement, the Seller agreed that the assets "may be assigned by the Buyer to a corporation controlled by Buyer, at any time prior to closing" providing certain conditions were met, including the written consent of the Seller. The Seller also agreed to change its name promptly after closing and to assist the transition contemplated by the sale by making available to the Buyer, the time and efforts of its corporate officers and by using its best efforts to persuade certain employees to enter the employ of Buyer where they would continue to perform in a similar capacity.

The purchase price was $200,000 and on July 30, 1976, the Buyer executed two promissory notes in the amount of $100,000 each. On this same date, the Buyer also entered into a Security Agreement with the Seller. Under the terms of the Security Agreement, the parties agreed that the transferred business assets would stand as security for all obligations of the Buyer to the Seller. In paragraph 3 of this Agreement, the Seller consented to a transfer of the collateral "to a corporation in which Buyer owns a majority of the voting stock" provided that prior to the transfer the transferee corporation agreed to be bound by the terms of the Security Agreement together with the other obligations assumed by Gardner. At this point, it bears mentioning that Mr. Gardner is the President of the Bankrupt corporation.

A UCC–1 financing statement was duly filed with the Secretary of State on July 16,

1976, listing MPA as the secured party and Guy Gardner as the Debtor.

Data Dynamics is the instant defendant because on October 6, 1976, MPA changed its name to BCE, Inc. and on June 30, 1977 this entity merged into Data Dynamics.

At the hearing in this matter, Mr. Gardner testified that at the time of purchase, he intended to go into business for himself and that the paragraphs in the Agreement with respect to a transfer of the assets to the corporation were inserted "just in case" he decided to pursue that course. He also stated that at the time of purchase he did not individually conduct any business and that he did not own a computer to accommodate the purchased software. He did state, however, that West Coast was already doing business and that it did have the necessary hardware. He further testified that West Coast's use of the system was an informal arrangement and that no formal assignment was ever executed. His testimony also revealed that West Coast made some of the payments on the notes and billed customers of the appraisal service. He also stated that after the purchase he continued to operate the system on MPA's computer and that it was not until approximately three months later that the software was transferred to West Coast. It is without dispute that, at this point, West Coast began doing business as Mass Property Appraisal.

The question presented for resolution is whether a secured party who contemplates or anticipates an imminent transfer of its collateral to another entity, as evidenced by the Security Agreement, has any affirmative duty to originally record or later amend the financial statement to reflect the successor debtor.

Under the facts of this case, this Court finds that such a duty exists. This duty springs from several sources in the Uniform Commercial Code. First, it is clear that financing statements in the state of Florida are indexed under the name of the Debtor (UCC 9–403(4)). The obvious reason for this method of indexing is to provide a convenient public record notice to potential creditors or purchasers of the collateral. *Industrial Packaging Products Co. v. Fort Pitt Packaging Intern, Inc.*, 169 A.2d 19, 399 Pa. 643 (1960). Second, UCC 9–402(4) provides that a financing statement includes the original and any amendments. In addition, every contract or duty embraced by the Uniform Commercial Code carries with it an obligation of good faith in its performance or enforcement. (UCC 1–203). The Code defines good faith as honesty in fact. (UCC 1–201(19). When the foregoing provisions are viewed against the backdrop of UCC 9–402(5), which required that financing statements not be seriously misleading, it is clear that MPA, now Data Dynamics, Inc., had a duty to originally record or later amend its financing statements to reflect West Coast Computer Services, Inc. as the successor·debtor. See *In the Matter of Kalamazoo Steel Process, Inc.*, 503 F.2d 1218 (6th Cir. 1974) and *In re Conger Printing Co., Inc.*, 18 UCC 224 (D.Ore.1975). The question of whether a secured party has a corresponding duty when a contemplated transfer to a successor debtor is not set forth in the security agreement is not before the Court. Neither is Sec. 9–402(6) of the UCC involved, which requires a refiling within four months after a Debtor's name change since it did not become effective in Florida until January 1, 1981, well after the controversy under consideration. Here, MPA knew of the impending transfer and it cannot now be heard to complain when it could have easily prevented its present predicament. Therefore, the security interest of Data Dynamics, Inc. is unperfected and unenforceable against the Trustee in Bankruptcy. UCC 9–301(1)(b), (3). *In re Consorto Construction Company, Inc.*, 212 F.2d 676 (3rd Cir. 1954), cert. denied 348 U.S. 833, 834, 75 S.Ct. 57, 99 L.Ed. 657 (1954).

The Trustee also seeks to compel a turnover of the property from the Defendant. However, it is clear from the record that on April 30, 1979, the assets of MPA were sold to James A. House Company and therefore, the Defendant has no property which can properly be the subject of a turnover.

A separate final judgment will be entered in accordance with the foregoing.