In re BEAVER DAM GRAIN, INC., Debtor.

KAISER AGRICULTURAL CHEMICALS, Plaintiff,

v.

BEAVER DAM GRAIN, INC., Defendant.

Bankruptcy No. 4–81–00417.
Adv. No. 4–82–00350.

United States Bankruptcy Court, W.D. Kentucky.

Oct. 3, 1984.

no contractual connection between the two beyond the lease, thereby becomes liable under a security agreement reached years earlier by the tenant and a supplier. We hold that the landlord incurs no such liability.

A key figure in our analysis is the tenant, B.C. Christopher Co. (BC),[1] which formerly did business *sub nom* "Beaver Dam Grain", and in so doing planted the seeds of this controversy. Principals to the dispute are the plaintiff-supplier, Kaiser Agricultural Chemical (Kaiser), and the defendant-landlord, Beaver Dam Grain, Inc. (BDG, Inc.),[2] now bankrupt.

## FINDINGS OF FACT

In February of 1977, Kaiser entered into a dealer contract[3] with BC. The contract granted Kaiser a purchase money security interest in all products sold to BC by Kaiser under their dealership agreement. The contract also gave Kaiser a security interest in the proceeds from the sale or disposition of the supplied products. During the time it operated Beaver Dam Grain as a Kaiser dealer, BC leased the business facilities it used from BDG, Inc.

On or about March 4, 1977, Kaiser properly filed a financing statement which covered all "fertilizers, agricultural materials and supplies, crop protection chemicals, aluminum culvert, and other products, now or hereafter acquired by the borrower from vender, together with the proceeds thereof."[4] B.C. Christopher Co., d/b/a Beaver Dam Grain was listed as the debtor on the financing statement.[5]

BDG, Inc. took control of Beaver Dam Grain from BC in September of 1980. BDG, Inc. operated the business in much the same manner as BC did, until it filed for bankruptcy in December of 1981. Dur-

Russ Wilkey, Owensboro, Ky., trustee.

Ronald Bamberger, Owensboro, Ky., for debtor.

Robert P. Moore, Madisonville, Ky., for plaintiff.

R. Allen Wilson, Owensboro, Ky., for trustee/defendant.

## MEMORANDUM OPINION

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

■ Here we consider whether a landlord who takes over and runs a grain elevator no longer operated by his lessee, with

---

1. B.C. Christopher Co., is a Missouri limited partnership.

2. Beaver Dam Grain, Inc., is a Kentucky Corporation.

3. See Appendix A.

4. See Appendix B.

5. The financing statement was signed by Bob Clemens on behalf of B.C. Christopher Co., d/b/a/ Beaver Dam Grain. Mr. Clemens has never been connected with Beaver Dam Grain, Inc. in any capacity.

ing the period between October 12, 1980 and November 30, 1981, Kaiser sold to BDG, Inc. a large amount of farm products, including fertilizer, which were allegedly covered by the 1977 financing statement. All sales to the debtor by Kaiser were made in the name of Beaver Dam Grain.

BC and BDG, Inc. are unrelated entities which have never merged, owned stock or an interest in the other, or been a subsidiary or agent of the other. The only connections between these two organizations are: 1) that BDG, Inc. leased business facilities to BC; and 2) that BDG, Inc. took over the operations of Beaver Dam Grain from BC in 1980.

## CONCLUSIONS OF LAW

The issue before the court is whether the 1977 financing statement gives Kaiser a valid security interest in the fertilizer it sold BDG, Inc. between October 12, 1980 and November 30, 1981. The plaintiff argues that it has a valid and perfected security interest in the fertilizer, even though BDG, Inc. was neither a party to the financing statement nor to the dealership/security agreement. It bases its argument on the legal principle "that a debtor cannot destroy the perfected security interest of a secured party by transferring title to the collateral or changing its name or corporate structure ..." [6] and cites more than a dozen cases as authority. This court firmly agrees with the legal reasoning of these cases, but finds that they are all clearly distinguishable on their facts from the case at the bar. In the majority of these cases, the courts have allowed a security interest to be asserted against a "successor" entity because it was merely the original debtor with a new name.[7] In the remaining cases cited by the plaintiff, the courts concluded that security interests remained valid where the original debtor had changed only its legal business form or both its name and form.[8]

In the present case, the original security agreement and financing statement supposedly covering the fertilizer in question, arose between BC and Kaiser.[9] Three years after the filing of the financing statement, BC transferred the operations of Beaver Dam Grain to an unrelated entity, BDG, Inc. Under Kentucky law, a security interest must "attach" in order for it to be valid.[10] A security interest attaches when: 1) *there is an agreement between the parties that the interest is to attach;* 2) value is given; and 3) the debtor has rights in the collateral. Here, Kaiser's security interest in the fertilizer it sold to the debtor never attached for there was no agreement between the parties.[11] Even if

6. *Matter of Serrins Automative Warehouse, Inc.,* 18 B.R. 718, 719 (Bkrtcy.W.D.Penn.1980), *Fliegel v. Associates Capital Co. of Delaware, Inc.,* 272 Or. 434, 537 P.2d 1144 (1975).

7. *In re Kittyhawk Television Corp.,* 516 F.2d 24 (6th Cir.1975); *Siljeg v. National Bank of Commerce of Seattle,* 509 F.2d 1009 (9th Cir.1975); *In re McBee,* 20 B.R. 361 (Bkrtcy.W.D.Tex.1982); *In re Icon Industries, Inc.,* 10 B.R. 693 (Bkrtcy. W.D.N.Y.1981); *American Heritage Bank & Trust Co. v. O. & E., Inc.,* 40 Colo.App. 306, 576 P.2d 566 (1978); *Continental Oil Co. v. Citizens Trust & Savings Bank,* 57 Mich.App. 1, 225 N.W.2d 209 (1974), *aff'd,* 397 Mich. 203, 244 N.W.2d 243 (1976); *In re Pasco Sales Co.,* 77 Misc.2d 724, 354 N.Y.S.2d 402 (S.Ct.1974).

8. *In re West Coast Food Sales, Inc.,* 637 F.2d 707 (9th Cir.1981); *Ryan v. Rolland,* 434 F.2d 353 (10th Cir.1970); *In re Taylorville Eisner Agency, Inc.,* 445 F.Supp. 665 (S.D.Ill.1977); *Matter of Serrins,* 18 B.R. at 718; *Fliegel v. Associates Capital Co. of Delaware, Inc.,* 537 P.2d at 1144.

9. See Appendices A and B.

10. Ky.Rev.Stat. § 355.9–204(1) (Banks-Baldwin 1983) [Hereinafter cited as KRS].

11. The plaintiff argues that there was an agreement between Kaiser and BDG, Inc. because BC was an "apparent" agent of BDG, Inc. at the time it signed the security agreement and financing statement. The burden of proving the existence of the agency is on Kaiser, the party pleading and relying on the agency. *Cincinnati Ins. Co. v. Clary,* 435 S.W.2d 88 (Ky.1968). Kaiser has not produced any evidence indicating that a formal agency relationship existed between BC and BDG, Inc.

It is true that under Kentucky law "[a]uthority to contract on behalf of the principal may arise from a usage or custom of business". *R.H. Kyle Furniture Co. v. Russell Dry Goods Co.,* 340 S.W.2d 220, 223 (Ky.1960). However, this rule applies in situations involving "implied agen-

the security interest had attached, it would still be unperfected under Kentucky law because the 1977 Kaiser/BC financing statement does not meet the statutory requirements of KRS 355.9–402 for a valid financing statement covering a security agreement between the debtor and Kaiser.[12]

In conclusion, the court notes that the takeover of Beaver Dam Grain's operations by BDG, Inc. from BC was done in a casual manner with no attention to legal formalities.[13] There is nothing in the record to suggest a merger, acquisition, or even a purchase and sale. What apparently happened was that a landlord simply stepped in and continued a line of business that had been abandoned by his lessee. Kaiser was aware of this change[14] and chose not to enter into a security agreement with the new operator of Beaver Dam Grain, BDG, Inc. Kaiser's failure to secure its interest in the products it sold to the debtor cannot be excused, under these circumstances, by BC's and BDG, Inc.'s noncompliance with certain legal requirements attendant to the transfer of a business. Therefore we hold that the security interest which Kaiser Agricultural Chemical claims in the fertilizer it sold to Beaver Dam Grain, Inc., is invalid and that its claim should be deemed unsecured. The court further holds that the trustee is authorized to sell the fertilizer and place the proceeds with the other funds being held for the debtor's estate.

cies" i.e. actual agencies which are created by the acts of principals and agents and are proved by deductions or inferences from other facts. In the present case the plaintiff is not seeking to show an implied agency but, is seeking to impose an agency by estoppel. An agency by estoppel is created by operation of law and by proof of acts by the principal which would reasonably justify others in believing that an actual agency relationship did exist. In this case, the evidence shows that Kaiser knew that it was dealing with BC as a separate entity and not as an agent for BDG, Inc. and that therefore it was not justified in believing that an actual agency relationship existed.

**12.** KRS § 355.9–402 provides that: "A financing statement is sufficient if it is signed by the *debtor and the secured party ...*" (emphasis added). In the present case, the 1977 statement was not signed by either the debtor, BDG, Inc., or its agents. Although Kentucky case law holds that a financing statement is sufficient even if it is not signed by the creditor, *Riley v. Miller*, 549 S.W.2d 314 (Ky.App.1977), under these circumstances the statute requires that the financing statement must be signed by the debtor in order to be valid. See also note 11, *supra*.

Counsel for the plaintiff has also argued that the 1977 filing was sufficient because the statement contained the trade name of the debtor and was signed by a representative of that business. It is a well established rule of law that filing a financing statement under a trade name is insufficient to perfect a security interest. *In re Leichter*, 471 F.2d 785–88 (2nd Cir.1972).

**13.** It was alleged by the plaintiff that the provisions of article 6 of the Uniform Commercial Code relating to "bulk transfers" were not followed by the parties during the transfer of Beaver Dam Grain. However, since this point was not further argued by counsel, it was not considered by the court in this opinion.

**14.** Transcript of hearing on Motion to Determine Validity of lien, *Kaiser Agricultural Chemicals v. Beaver Dam Grain, Inc.*, January 20, 1983 at PP. 12, 18.

**APPENDIX A**    D  ⸱ ⸱ 8 1977

**KAISER**
**AGRICULTURAL**
**CHEMICALS**

DIVISION OF KAISER ALUMINUM & CHEMICAL SALES, INC.

# DEALER CONTRACT

TO: <u>B. C. Christopher Co.</u>
<u>D/B/A Beaver Dam Grain</u>

<u>P. O. Box 281</u>
(Mailing Address)

<u>Beaver Dam (Ohio), KY. 42320</u>
(City or Town, County and State)

for facility located at: <u>Beaver Dam, KY.</u>

Kaiser Agricultural Chemicals hereby appoints the above named person(s), firm, or corporation, as an authorized Kaiser Agricultural Chemicals Dealer (herein referred to as "Dealer") empowered to deal in the products described below and Kaiser Agricultural Chemicals agrees with Dealer to make available various technical services and publications concerning said products, their use, application and characteristics and to sell to Dealer the products upon the terms and conditions hereinafter set forth.

All orders placed by Dealer hereunder shall be subject to acceptance by Kaiser Agricultural Chemicals and may be rejected in whole or part.

Dealer agrees with Kaiser Agricultural Chemicals to use its best efforts to develop and service customers; to maintain and operate Dealer's facility in accordance with accepted practices; to establish and continually maintain during the term of this Contract a full and adequate inventory of such products; and to purchase said products from Kaiser Agricultural Chemicals upon the following terms and conditions:

## PRODUCTS

Fertilizers, agricultural materials and supplies, crop protection chemicals, aluminum culvert, and other products, including, but not limited to:

1. **BASIS OF SALES:** All sales to Dealer hereunder shall be subject to credit approval. In the event Dealer submits purchase orders or other memoranda containing terms or provisions inconsistent with or in addition to the terms and provisions of this Contract, the latter shall be controlling unless Kaiser Agricultural Chemicals expressly agrees to such inconsistent or additional terms in writing. Each order shall constitute a separate transaction and Kaiser Agricultural Chemicals, in addition to any other rights, may, upon nonpayment, refrain from delivery of subsequent orders until payment is received or require payment in advance before delivery.
2. **RECEIPT OF PRODUCTS:** Upon receipt of products, Dealer shall note any shortages or damages upon the appropriate shipping documents and shall immediately notify both Kaiser Agricultural Chemicals and the delivering carrier; failure to do so within 48 hours shall relieve Kaiser Agricultural Chemicals from any liability for such shortage or damage.
3. **PRICE AND PAYMENT:** Dealer shall pay for products shipped hereunder in accordance with and subject to the terms, provisions and discounts set forth in Kaiser Agricultural Chemicals' Price Lists covering said products in effect at the time of shipment, which Price Lists, as amended from time to time, shall become a part of this Contract. Written credit approval from Kaiser Agricultural Chemicals Credit Department shall be controlling over the terms of Kaiser Agricultural Chemicals' Price Lists with respect to the time of payment and deferred charges, which credit approval may be changed or withdrawn by Kaiser Agricultural Chemicals at any time.
4. **SECURITY INTEREST:** Dealer hereby grants to Kaiser Agricultural Chemicals a Purchase Money Security Interest in the collateral described in Paragraph 5 hereof to secure the payment of Dealer's indebtedness to Kaiser Agricultural Chemicals.
5. **COLLATERAL:** The collateral of the Purchase Money Security Interest granted herein is and shall be all products sold to Dealer hereunder, and the proceeds of their sale or disposition.
6. **FINANCING STATEMENT:** Dealer shall sign and execute such other instruments, documents or further assurances as may be required from time to time to implement the provisions of this Contract including, but not limited to, a financing statement.
7. **REMOVAL OF PRODUCT:** Except for sales made in the ordinary course of Dealer's business, no products received by Dealer under the terms and conditions of this Contract shall be removed or permitted to be moved from Dealer's facility as above described without first securing written consent from Kaiser Agricultural Chemicals.
   The Parties hereto agree to be bound by the above Terms and Conditions and all Terms and Conditions on the reverse side hereof.

KAISER AGRICULTURAL CHEMICALS
A DIVISION OF KAISER ALUMINUM & CHEMICAL SALES, INC.

_____
Sales Representative

BY: _____  2-25-7
        District Manager        Date

I (we) have read the foregoing and hereby agree to be bound by its terms and provisions and to perform on the terms and provisions therein contained.

Dated this _23_ day of _Feb_, 19_77_

*Beaver Dam Grain*
*Bros. Clemens*

FJ-2297

A

8. **INSPECTION AND REPORTS:** To evaluate any credit extended to Dealer, Credit personnel of Kaiser Agricultural Chemicals shall have the right and privilege to enter upon Dealer's premises and/or facilities at any reasonable time to inspect the collateral and Dealer's books and records pertaining to the collateral or its proceeds and Dealer shall assist Kaiser Agricultural Chemicals in whatever way necessary to make any inspection. Dealer shall furnish on such forms as Kaiser Agricultural Chemicals may from time to time approve and at such periodic intervals as Kaiser Agricultural Chemicals may specify:
   - (a) Inventory and remittance reports certified by Dealer as to accuracy, listing types and quantities of Kaiser Agricultural Chemicals products on hand and transmitting payments due Kaiser Agricultural Chemicals hereunder.
   - (b) Accounts receivable reports, certified by Dealer as to accuracy, disclosing all relevant details as to such accounts receivable in which Kaiser Agricultural Chemicals has a security interest hereunder; and
   - (c) Annual Balance Sheet and Profit and Loss Statement, certified as Kaiser Agricultural Chemicals may require, accurately reflecting the financial condition of Dealer.

9. **REPRESENTATIONS:** Dealer agrees and affirms that information supplied and statements made by Dealer in any financial, credit or accounting statement or application for credit to or pursuant to this Contract are, or will be true and correct and that no financing statement covering the collateral or its proceeds is on file in any public office and that, except for the Purchase Money Security Interest granted in this Contract, there is no adverse lien, security interest or encumbrances in or on the collateral, or the proceeds thereof.

10. **DEFAULT:** Material misrepresentations made in connection with this Contract, noncompliance or nonperformance, shall constitute a default hereunder. In addition, Dealer shall be in default in the event of insolvency or the bringing of insolvency proceedings. If Dealer defaults hereunder or Kaiser Agricultural Chemicals deems itself insecure, Kaiser Agricultural Chemicals, in addition to remedies otherwise available, may (1) require Dealer to assemble and deliver all collateral to Kaiser Agricultural Chemicals or its nominee F.O.B. such mutually convenient place as Kaiser Agricultural Chemicals may designate: (ii) demand, without notice, payment in full of all indebtedness due Kaiser Agricultural Chemicals, together with all costs and expenses of Kaiser Agricultural Chemicals, including, but not limited to, a reasonable attorney's fee. Kaiser Agricultural Chemicals may remedy or waive any default without waiving any prior or subsequent default.

11. **WARRANTY:** Kaiser Agricultural Chemicals warrants that the product shall be merchantable and conform to the analysis appearing on the package or shipping documents; that it will convey good title free from any lien or encumbrance. KAISER AGRICULTURAL CHEMICALS MAKES NO WARRANTY THAT THE GOODS ARE FIT FOR ANY PARTICULAR PURPOSE NOR ANY OTHER WARRANTY, EXPRESSED OR IMPLIED, EXCEPT AS PROVIDED ABOVE. Dealer acknowledges, by the execution of this Contract, familiarity with and knowledge of the label provisions or technical instructions affixed to or accompanying the products concerning their use, storage, handling and other characteristics. Dealer shall not enlarge or alter in any way the label provision or technical instructions nor the limitations of warranty in this Contract, nor make or permit to be made representations concerning the products, their use, application or characteristics inconsistent with the label provisions, technical instructions or the limitations of warranty herein and shall save Kaiser Agricultural Chemicals harmless from liability arising from violations of this undertaking.

12. **GENERAL PROVISIONS AND TERMINATION:**
   - (a) Kaiser Agricultural Chemicals shall not be liable for any damages resulting from: any delay or failure of performance arising from any cause not reasonably within Kaiser Agricultural Chemicals' control; accidents to, breakdowns or mechanical failure of machinery or equipment, however caused; strikes or other labor troubles; shortages of labor, transportation, raw materials, energy sources, or failure of usual means of supply; fire; flood; war, declared or undeclared; insurrection; riots; acts of God or the public enemy; or priorities, allocations or limitations or other acts required or requested by Federal, state or local governments or any of their subdivisions, bureaus or agencies. Kaiser Agricultural Chemicals may cancel or delay performance of any order hereunder for any period reasonably necessary due to any of the foregoing.
   - (b) No right or interest in this Contract shall be assigned by Dealer nor shall Dealer delegate any obligation owed to Kaiser Agricultural Chemicals under this Contract without the written permission of Kaiser Agricultural Chemicals. Any attempted assignment or delegation shall be wholly void and totally ineffective for all purposes without such prior consent.
   - (c) This Contract shall become effective and binding upon acceptance thereof by Kaiser Agricultural Chemicals, which acceptance shall be evidenced by execution below by a District Manager of Kaiser Agricultural Chemicals. Upon becoming effective, this Contract shall cancel and supersede any other contract or agreement between Kaiser Agricultural Chemicals and Dealer with respect to the sale of the products described herein and shall remain in full force and effect until terminated by either party by written letter of termination to the other party mailed by either registered or certified mail to the addresses herein indicated.
   - (d) This Contract is intended by the parties to be a final expression of their agreement and is intended also as a complete and exclusive statement of the terms of such agreement. No course of prior dealings between the parties and no usage of the trade shall be relevant to supplement or change any terms used in this Contract. Acceptance or acquiesence in a course of performance rendered under this Contract shall not be relevant to determine the meaning of this Contract even though the accepting or acquiescing party has knowledge of the nature of the performance and opportunity for objection. Whenever a term defined by the Uniform Commercial Code is used in this Contract, the definition contained in the Uniform Commercial Code as adopted in Georgia is to control.
   - (e) Dealer is an independent contractor and not an agent of Kaiser Agricultural Chemicals, and Dealer shall have no power and shall not represent to anyone that it has any power to bind Kaiser Agricultural Chemicals by any representation, warranty, or otherwise.
   - (f) In no event shall Kaiser Agricultural Chemicals be liable for any special, consequential or contingent damages resulting from Kaiser Agricultural Chemicals' breach of warranty, delay of performance or any other default hereunder.

## APPENDIX B

| This FINANCING STATEMENT is presented to filing officer for filing pursuant to the Uniform Commercial Code. | Code. | 3 Maturity date (if any) |
|---|---|---|
| 1 Debtor(s) (Last Name First) and address(es) | 2 Secured Party(ies) and address(es) | Filing Officer (Date, Time, Number, and Filing Office) |
| B. C. Christopher Co. D/B/A<br>Beaver Dam Grain<br>P. O. Box 281<br>Beaver Dam, KY. 42320 | Kaiser Agricultural Chemicals<br>Div. of Kaiser Alum. &<br>Chemical Sales Inc.<br>646 Starks Building<br>Louisville, Kentucky 40202 | MAR 4 1977<br>AM PM.<br>MARY RANNEY ROBERTS<br>CLERK<br>Ohio County Court (Kentucky) |

4 This financing statement covers the following types (or items) of property:

Fertilizers, agricultural materials and supplies, crop protection chemicals aluminum culvert, and other products, now or hereafter acquired by Borrower from Vendor, together with the proceeds thereof.

Check [X] if covered:  [X] Proceeds of Collateral are also covered   [X] Products of Collateral are also covered   No additional sheets presented

Filed with: Registrar of Ohio County, KY.

This instrument prepared by

B. C. Christopher Co. D/B/A
Beaver Dam Grain
By: _Signature(s) of Debtor(s)_

By: _Signature(s) of Secured Party(ies)_

Filing Officer Copy — Numerical

STANDARD FORM — UNIFORM COMMERCIAL CODE — FORM UCC-1

National Graphics Corp., Col., O. Form No. L