**In re SPARMAL ENTERPRISES, INC.**
**f/k/a Midwest Smorgasbord, Inc.**
**d/b/a Duff's Smorgasbord, Debtor.**

**Bankruptcy No. IP85–4656RA.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

Jan. 13, 1987.

---

Thomas C. Scherer, Bamberger & Feibleman, Indianapolis, Ind., for debtor.

S. James Fishman, Garelick, Cohen & Fishman, Indianapolis, Ind., for Unofficial Creditors' Committee.

Elliott D. Levin, Rubin & Levin, Indianapolis, Ind., for Beneficial Commercial Corp.

## ENTRY ON APPLICATION FOR ORDER AUTHORIZING ABANDONMENT OF PROPERTY

ROBERT L. BAYT, Bankruptcy Judge.

On October 17, 1985, Sparmal Enterprises, Inc. ("Sparmal"), filed its voluntary petition under Chapter 11 of Title 11 of the United States Code. On December 3, 1985, Beneficial Commercial Corporation ("Beneficial") filed the instant application for order authorizing abandonment of property ("Application").

The following facts are undisputed. On or about August 18, 1982, Beneficial properly filed with the Indiana Secretary of State and applicable county recorder a financing statement naming Monroe Smorgasbord, Inc. ("Monroe"), as debtor and securing existing restaurant equipment in the possession of Monroe. No after-acquired property was secured by such financing statement.

As evidenced by a certificate of merger issued by the Indiana Secretary of State, on June 10, 1983, Monroe merged into Midwest Smorgasbord, Incorporated ("Midwest"). On June 15, 1984, the Secretary of State issued a merger certificate merging Midwest into Sparmal. Beneficial did not amend its filed financing statement to reflect debtors' restructuring and name changes.

Due to the recorded mergers without corresponding financing statement amendments, there is no question that the filed financing statement is seriously misleading; neither the named debtor, Monroe, nor its immediate successor-in-interest, Midwest, have survived their respective mergers. Sparmal has therefore objected to Beneficial's Application alleging that the filed financing statement "... undermines the notice filing provisions of the [Uniform Commercial Code]." Sparmal's September 17, 1986, Brief, p. 8.

The parties have framed the instant legal issue as follows:

... whether a security interest in equipment perfected by the filing of a financing statement which names the debtor corporation is valid against the trustee in bankruptcy when there is a change in the debtor corporate structure which occurs prior to the bankruptcy filing, and the secured party fails to alter or amend the financing statement to reflect the change in corporate structure.

August 12, 1986, Agreed Entry, ¶ 4. For purposes of only this Entry, Beneficial is assumed to have actual notice of debtors' mergers.

Property interests are defined by state law. *See Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). The adequacy of Beneficial's filed financing statement is determined by reference to Article 9 of the Uniform Commercial Code ("UCC"), IC 26–1–9 *et seq.*

Monroe was in possession of the collateral in question at the time of the financing statement's filing, *supra.* As such, the issue at bar is resolved in favor of perfec-

tion as a matter of law by IC 26–1–9–402(7), which reads:

(7) A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership, or corporate name of the debtor, whether or not it adds other trade names or the names of partners. Where the debtor so changes his name or in the case of an organization its name, identity, or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four (4) months after the change, unless a new appropriate financing statement is filed before the expiration of that time. A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer.

IC 26–1–9–402(7). Stated simply, under Section 9–402(7) of the UCC, given a corporate name change and/or restructure,

... the old financing statement is not effective as to new collateral acquired more than four months after the change, unless a new appropriate financing statement is filed before the expiration of the four months. *The old financing statement,* if legally still valid under the circumstances, *would continue to protect collateral acquired before the change* and ... would also protect collateral acquired within the four months. (emphasis supplied)

Uniform Laws Annotated § 9–402, 1972 Official Comment, ¶ 7.

Subsection (7) of Section 9–402 is absent from the UCC's 1962 Official Text. Consequently, before 1972 and prior to legislative enactments of the 1972 Official Text, several courts held unperfected unamended financing statements where the debtor had undergone restructuring or a name change. *See, e.g., In re Kalamazoo Steel Process, Inc.,* 503 F.2d 1218, 1224 (6th Cir.1974); *In re White,* 51 B.R. 514, 518 (Bkrtcy.E.D. Tenn.1985); *Matter of West Coast Computer Services,* 19 B.R. 170, 172 (Bkrtcy.M. D.Fla.1982); *In re DG & Associates, Inc.,* 9 B.R. 94, 96–98 (Bkrtcy.E.D.Tenn.1981). *But see Continental Oil v. Citizens Trust & Sav. Bank,* 57 Mich.App. 1, 225 N.W.2d 209, 212 (1974), *aff'd,* 397 Mich. 203, 244 N.W.2d 243, 244 (1976); *In re Pasco Sales Co., Inc.,* 77 Misc.2d 724, 354 N.Y.S.2d 402, 404–05 (1974), *appeal dismissed as moot,* 52 A.D.2d 138, 383 N.Y.S.2d 42 (1976).

Subsection 9–402(7) was added to the Official Text of the UCC "[t]o solve the dilemma of whether to require the filing of an amendment upon a significant change of identity of the debtor. ..." *American City Bank v. Western Auto Supply,* Tenn. App., 631 S.W.2d 410, 418 (1981). Specifically, IC 26–1–9–402(7) contains a four month security cutoff which appears to represent the drafters' compromise between the secured creditor's burden to notify others of the security interest and all potential creditors' responsibility to inquire into the debtor's source of title. *Accord, In re Meyer-Midway, Inc.,* 65 B.R. 437, 442–43 (Bkrtcy.N.D.Ill.1986).

Indiana adopted the 1972 Official Text of the UCC by 1985 legislative enactment. P.L. 93–1985. However, for purposes of filing requirements and the like, the 1972 version of the UCC did not become effective until January 1, 1986.

■ The 1972 amendments clarify the UCC's earlier text. No alteration of existing rights is intended; the purpose of the amendments is to recognize the "... custom and usage of the current commercial world...." *Continental, supra,* 225 N.W.2d at 213. In short, the 1972 version of the UCC is designed to resolve ambiguities and perceived omissions within the Code. *See PPG Industries, Inc. v. Hartford Fire Ins. Co.,* 531 F.2d 58, 61 (2nd Cir.1976) (the 1972 amendments constitute a "... persuasive indication of the effect which [an amended UCC section] was originally intended to have."); *cf. United States v. Gleaners & Farmers Co-op. Elevator Co.,* 481 F.2d 104, 106 (7th Cir.1973) (applying Indiana law and finding that the unenacted 1972 UCC provisions "aid" the Court in its decision).

■ Given the foregoing analysis, had the Indiana legislature not adopted the

1972 UCC Official Text, it would be within this Court's sound discretion to here apply as controlling the added applicable 1972 Code section. However, presumptively in recognition that the amended UCC constitutes a mere clarification of prior law,[1] the statutory 1972 revisions are expressly retrospective in effect.[2]

> *A transaction validly entered into after July 1, 1964, and before January 1, 1986,* which was subject to the provisions of IC 26–1, as effective on December 31, 1985, and which would be subject to this act if it had been entered into after December 31, 1985, and the rights, duties, and interests flowing from such a transaction remain valid after December 31, 1985, and *may be* terminated, completed, consummated, or *enforced as required or permitted by this act.* (emphasis supplied).

P.L. 93–1985, § 42.[3]

Pursuant to Rules 9014 and 7052 and Federal Rule of Civil Procedure 52, this Entry constitutes all applicable findings of fact and conclusions of law.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that Beneficial has a pre-petition perfected security interest in the subject collateral.

---

1. The retroactive effect of the 1972 amendments comports with decisional and constitutional law as the effect of the amendments is remedial and no vested rights are affected. *See, e.g., McGill v. Muddy Fork of Silver Creek, Etc.,* 175 Ind.App. 48, 370 N.E.2d 365, 370 (1977); *Herrick v. Sayler,* 245 F.2d 171, 174 (7th Cir.1957).

2. At least two other jurisdictions' adoption of the 1972 UCC Official Text were not given retrospective effect for purposes of enforcement.

*See* Iowa Code § 554.11107 (1981), *cited in Citizens Sav. Bank v. Sac City State Bank,* Iowa, 315 N.W.2d 20, 25 (1982); *White, supra,* 51 B.R. at 516 n. 3 (Tennessee).

3. Burns Indiana Statutes (1986 cum.supp.) imprecisely characterizes Section 42 of P.L. 93–1985 as "Compiler's Notes". Sections 42 through 46 of P.L. 93–1985 are transitional *statutory* guidelines which were not included as Indiana Code sections.