CONTINENTAL OIL COMPANY v CITIZENS TRUST & SAVINGS
BANK

Docket No. 56527. Argued November 6, 1975 (Calendar No. 7).—
Decided July 28, 1976.

Plaintiff Continental Oil Company brought an action against
defendant Citizens Trust and Savings Bank for unlawfully
converting assets of Blossom Trail Growers, Inc., which were
subject to a security agreement in favor of the plaintiff. The
defendant asserted the priority of its secured interest, perfected
when the debtor was known as South Haven Fruit Exchange,
before it changed its corporate name. The plaintiff concedes
that the defendant bank has a prior secured interest in the
assets but argues that the defendant had an affirmative duty to
amend or refile the financing statement to reflect the changed
name of the debtor. The Van Buren Circuit Court, David
Anderson, Jr., J., granted summary judgment for the defend-
ant. The Court of Appeals, Allen, P. J., and J. H. Gillis and
McGregor, JJ., affirmed (Docket No. 18595). Plaintiff appeals.
*Held:*

No statutory provisions require that a financing statement be
amended or refiled when a debtor undergoes a name change
subsequent to the original filing. The Uniform Commercial
Code regulates commercial transactions within the marketplace
and the Court declines to engraft a caselaw requirement which
goes beyond the established practices of the marketplace or the
provisions of the UCC.

Affirmed.

Justice Williams, with Chief Justice Kavanagh concurring,
would hold that a secured creditor who has actual knowledge of
a change in its debtor's name, where that change is seriously
misleading to potential future creditors or customers of the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 6] 69 Am Jur 2d, Secured Transactions § 390.

Construction and effect of UCC Art 9, dealing with secured transac-
tions, sales of accounts, contract rights, and chattel paper. 30
ALR3d 9.

[3] 69 Am Jur 2d, Secured Transactions §§ 392, 393.

[5] 69 Am Jur 2d, Secured Transactions § 286 *et seq.*

debtor, is required to make a good faith attempt to refile or amend its financing statement to reflect the name change in order to preserve the perfection of its security interest. The validity of a financing statement under the Uniform Commercial Code depends on whether it is not seriously misleading, *i.e.,* whether it provides simple notice to third parties of the possible interest of the secured creditor which would lead interested parties to inquire further. The UCC imposes an obligation of good faith in the performance of every duty within it. Good faith requires a creditor who has actual knowledge of the creation of a secret lien by change of the debtor's name to attempt to refile or amend its financing statement.

57 Mich App 1; 225 NW2d 209 (1974) affirmed.

## OPINION OF THE COURT

1. SECURED TRANSACTIONS—FINANCING STATEMENTS—DEBTOR'S CHANGE OF NAME—UNIFORM COMMERCIAL CODE.

A defendant secured creditor was under no obligation, in order to maintain a valid perfected security interest, to refile a financing statement evidencing his security interest in a debtor's assets, after the debtor underwent a substantial change of name, where the financing statement was complete and accurate in its entirety at the time of the original filing; neither the Uniform Commercial Code nor the established practices of the marketplace require a refiling (MCL 440.9402[5]; MSA 19.9402[5]).

## DISSENTING OPINION

KAVANAGH, C. J., and WILLIAMS, J.

2. SECURED TRANSACTIONS—FINANCING STATEMENTS—FILING—DEBTOR'S CHANGE OF NAME—UNIFORM COMMERCIAL CODE.

*A secured creditor who has actual knowledge of a change in its debtor's name is required to make a good faith attempt to refile or amend its financing statement to reflect the name change in order to preserve the perfection of its security interest where the name change is seriously misleading to potential future creditors or customers of the debtor (MCL 440.9402; MSA 19.9402).*

3. SECURED TRANSACTIONS—FINANCING STATEMENTS—FILING—UNIFORM COMMERCIAL CODE.

*The validity of a financing statement under the Uniform Commercial Code depends on whether it is not seriously misleading i.e., whether it provides simple notice to third parties of the*

possible interest of the secured creditor which would lead interested parties to inquire further (MCL 440.9402; MSA 19.9402).

4. SECURED TRANSACTIONS—FINANCING STATEMENTS—FILING—DEBTOR'S CHANGE OF NAME.

A financing statement filed under a debtor's earlier name will not give notice of the security interest to a potential creditor of the debtor after the debtor's name has been changed and will thus thwart the purpose of the Uniform Commercial Code in requiring notice filing of financing statements (MCL 440.9402; MSA 19.9402).

5. SECURED TRANSACTIONS—PRIORITY—GOOD FAITH—UNIFORM COMMERCIAL CODE.

A breach of good faith by a secured creditor may be considered by a court to alter priorities of secured interests which otherwise would be determined under article 9 of the Uniform Commercial Code (MCL 440.1203; MSA 19.1203).

6. SECURED TRANSACTIONS—PRIORITY—GOOD FAITH—CHANGE OF NAME—KNOWLEDGE.

A secured creditor breached its duty of good faith and is not entitled to priority in a debtor's property under the secret lien resulting from the breach where, through a person who was an officer of both the creditor and the debtor at the time the debtor changed its corporate name, the secured creditor had actual knowledge of the debtor's name change, and the name change assured that a diligent search of the index of financing statements by a subsequently secured creditor would not bring to light the debtor's prior security agreement with the first secured creditor.

*Fisher, Troff & Fisher* (by *David J. Williams)* for plaintiff.

*Neal, Grier, Schutt, Hanson & Hanson* for defendant.

FITZGERALD, J. Plaintiff Continental Oil Company and defendant Citizens Trust and Savings Bank each believes it has a superior secured interest in inventory, proceeds, and accounts receivable belonging to Blossom Trail Growers, Inc., formerly named South Haven Fruit Exchange. The question

presented is whether Citizens Bank, as the holder of a prior secured interest against South Haven, had an affirmative duty to amend or refile its financing statement to reflect the name change from South Haven Fruit Exchange to Blossom Trail Growers, Inc., in order to preserve its superior interest over Continental Oil Company, a subsequent creditor which had perfected its security interest against Blossom Trail Growers, Inc. We find no such duty and affirm the Court of Appeals.

On May 12, 1964, South Haven Fruit Exchange, in order to obtain a loan, granted Citizens Bank a security interest in its inventory, "whether now owned, or hereafter acquired". South Haven then executed a general assignment of present accounts receivable, "together with all future book accounts, notes receivable, and all moneys payable thereon, and amounts due under any contract entered into by the assignor, that may be or hereafter become due or owing to the assignor from any corporation, person, or persons". This interest was perfected by filing with the Van Buren County Register of Deeds on May 19, 1964, and the Secretary of State on June 6, 1964.

On June 9, 1966, South Haven Fruit Exchange amended its articles of incorporation by changing its corporate name to Blossom Trail Growers, Inc. Copies of the amended articles were filed with the Department of Commerce and the Van Buren County Clerk. Two years later, Agrico Chemical Company, a subsidiary of Continental Oil, agreed to provide Blossom Trail with products for resale to others. An agreement was executed giving Agrico a security interest covering "all present and future inventory of debtor * * * and all proceeds, including accounts receivable, notes receiva-

ble * * * from sale or disposition". This security interest was perfected by the proper filing of a financing statement.

Blossom Trail encountered financial difficulties and, sometime in 1969, filed a voluntary petition in bankruptcy. Citizens Bank, having on deposit in Blossom Trail's account the sum of $10,777.15 representing the proceeds from the sale of fertilizer and plant food, used these funds to set off the amount of Blossom Trail's unpaid debt.

Plaintiff Continental Oil filed a complaint seeking a judgment in the amount of $10,777.15, alleging that defendant Citizens Bank unlawfully converted assets subject to a security agreement in favor of plaintiff given by Blossom Trail. Following defendant's amended answer, plaintiff moved for summary judgment on the grounds that defendant had failed to state a valid defense and that there was no genuine issue as to any material fact. The circuit judge, however, granted a summary judgment to defendant, determining that the interest of Citizens Bank prevailed over that of Continental Oil because there existed no requirement that a secured creditor amend its financing statement when a debtor changed its name. Following denial of rehearing, the Court of Appeals affirmed and we granted leave to appeal.

Plaintiff agrees with the circuit court that the priority of security interest in the same collateral is determined by the date upon which the financing statement is filed.[1] Conceding that defendant was the first to file, plaintiff argues that this general rule should not apply where a secured creditor "knew, or should have known, of the debtor's change of name". This knowledge, plaintiff asserts, was imputed to Citizens Bank as that

---

[1] MCLA 440.9303; MSA 19.9303.

of one of its officers, John M. Thomas, who also served as a director and treasurer of Blossom Trail Growers, Inc., when the articles of incorporation were amended to reflect the change of name. Though the statutory provisions are silent as to whether secured creditors must amend or refile financing statements following a debtor's name change, plaintiff urges that principles of equity and estoppel should be invoked to protect such creditors who have extended secured loans with a good-faith belief that no prior secured creditors existed.

We agree with the Court of Appeals decision and adopt completely the analysis which distinguishes between those situations involving names of debtors appearing on the financing statement which are misleading *ab initio* and those involving a subsequent name change which differs from the name appearing on the original filing statement. Whether a name is "seriously misleading"[2] is significant because financing statements are indexed according to the debtor's name.[3] However, no statutory provisions require that a financial statement be amended or refiled when a debtor undergoes a *subsequent* name change. The Court of Appeals addressed this point persuasively in stating:

"[T]here is no specific requirement in any section of the UCC that a secured party refile a financing statement to reflect the debtor's change of names. In fact, the drafters of Article 9 have proposed an amendment to § 9-402 which, in proposed (7) would state:

" 'Where the debtor so changes his name or in the case of an organization its name, identity or corporate

---

[2] The term which appears in MCLA 440.9402(5); MSA 19.9402(5).

The provision states: "A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."

[3] MCLA 440.9403(4); MSA 19.9403(4).

structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed before the expiration of that time.' UCC Rep Serv, Current Materials, Uniform Code, Appendix-Article 9, Revised Article 9 of the Uniform Commercial Code (1972), pp 130–131.

"This change is proposed to provide guidelines when name change occurs 'with the result that a filed financing statement might become seriously misleading'. UCC Rep Serv, Current Materials, Uniform Code, Appendix-Article 9, Revised Article 9 of the Uniform Commercial Code (1972), 1972 Comment to § 9-402, p 135. The very fact that this amendment is proposed is recognition that custom and usage of the current commercial world do not require a refiling. Defendant, as part of the commercial marketplace, is reasonably entitled to rely upon the prevailing practice and, until the legislature changes the law, should not be required to do that which was not the practice of the marketplace."[4]

We decline to engraft a court-established requirement upon the provisions of the UCC which regulate commercial transactions within the marketplace. We leave such action to the Legislature, should it choose to do so.

It is the alleged actual knowledge of Citizens Bank regarding the name change that Continental Oil believes is most compelling in requiring Citizens Bank to amend or refile its financing statement. While we appreciate the need to discourage the creation of "secret liens" which a potential creditor or purchaser could not locate by a diligent search of the financing statement on file, it is not within the province of this Court to create requirements which go beyond the established practices of the marketplace. See, *In re Pasco Sales, Inc,* 77 Misc 2d 724; 354 NYS2d 402 (1974); *In re GAC,* 11

---

[4] 57 Mich App 1, 8–9; 225 NW2d 209, 212–213 (1974).

UCC Rep Serv 412 (WD Mich, 1972); *In re The Grape Arbor, Inc,* 6 UCC Rep Serv 632 (ED Pa, 1969); *In re Kalamazoo Steel Process, Inc,* 503 F2d 1218 (CA 6, 1974).

Affirmed. Costs to appellee.

Levin, Coleman, and Lindemer, JJ., concurred with Fitzgerald, J.

Ryan, J., took no part in the decision of this case.

Williams, J. *(for reversal).* This case presents the question whether a secured creditor who has actual knowledge of a change in its debtor's name, where that change is seriously misleading to potential future creditors or customers of the debtor, is required to make a good faith attempt to refile or amend its financing statement to reflect the name change in order to preserve the perfection of its security interest. We find that such a secured creditor has that duty and reverse the Court of Appeals and the trial court.

### I—Facts

In May of 1964, South Haven Fruit Exchange granted defendant Citizens Trust and Savings Bank a security interest in its inventory "whether now owned, or hereafter acquired" for purposes of securing a loan. South Haven further assigned to Citizens Trust its accounts receivable, "future book accounts, notes receivable, and all monies payable thereon, and amounts due under any contracts entered into by the assignor, that may be or hereafter become due or owing to the assignor from any corporation, person, or persons".

Citizens Trust's interest was perfected through

proper filing with the Van Buren County Register of Deeds and the Secretary of State.

In June of 1966, debtor South Haven Fruit Exchange amended its articles of incorporation to change its corporate name to Blossom Trail Growers, Inc. The financing statement was not refiled or amended to reflect the name change, although financial statements are indexed according to the debtor's name, and therefore potential creditors of Blossom Trail would find no record of Citizens Trust's security interest in spite of a diligent search of the index.

One of the officers of Citizens Trust, John M. Thomas, also served as a director and treasurer of South Haven when the corporate name was changed, and thus obviously knew of the change.

In January of 1968, Agrico Chemical Company, a subsidiary of plaintiff Continental Oil, agreed to provide its products to Blossom Trail for resale. Pursuant to this agreement, plaintiff and Blossom Trail executed a security agreement giving plaintiff a secured interest in "all present and future inventory of Debtor * * * and all proceeds, including accounts receivable, notes receivable * * * from sale or disposition". This security interest in Blossom Trail's property was also properly perfected through the filing of a financing statement.

In 1969, Blossom Trail filed a voluntary petition in bankruptcy. Shortly thereafter, Citizens Trust, in which debtor had deposited certain proceeds, set off the sum of $10,777.15 to settle the debt which had arisen with debtor in 1964 as described above.

Continental Oil filed suit against Citizens Trust for conversion of assets subject to its security agreement with Blossom Trail. Plaintiff moved for a summary judgment, asserting that defendant had failed to state a valid defense and that there

was no genuine issue as to any material fact. However, the trial court rendered summary judgment for defendant, and the Court of Appeals affirmed. We granted leave to appeal.

## II —Duty Under the Code of a Secured Creditor Where the Debtor Subsequently Changes Its Name

### a) Duty Imposed Under MCLA 440.9402; MSA 19.9402.

The formal requisites for perfection of a security interest through the filing of a financing statement are laid out in MCLA 440.9402; MSA 19.9402, which reads in pertinent part as follows:

"(1) A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. * * * A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties."

Through this provision, the drafters of the Uniform Commercial Code adopted a "simplified and workable filing system"[1] known as "notice filing". The central purposes of notice filing as expressed in the Official UCC Comment to article 9, § 9-402, is to require enough facts in the financing statement to notify potential future creditors of the debtor or potential purchasers of the collateral of the possible interest of the secured creditor:

[1] See Official UCC Comment to article 9, § 9-402. See MCLA 440.9402.

"What is required to be filed is not * * * the security agreement itself, but only a simple notice which may be filed before the security interest attaches or thereafter. The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs."

Under MCLA 440.9402(5), MSA 19.9402(5) the validity of the financing statement is dependent on whether it is seriously misleading, that is, whether it serves this central purpose of providing simple notice to third parties of the possible interest of the secured creditor, which would lead interested parties to inquire further to get the full picture.[2]

However, a financing statement will not notify interested third parties of the possible interest of a secured creditor in the property of the debtor unless it is properly filed under the debtor's name. This is so because under MCLA 440.9403(4); MSA 19.9403(4), financing statements are to be indexed according to the debtor's name.[3]

Thus, for example, after the debtor's name had been changed from South Haven Fruit Exchange to Blossom Trail Growers, Inc., in the instant case, a potential creditor of the debtor would check the index under the name Blossom Trail Growers, Inc., and would receive no notice whatsoever of a secured interest in debtor's property previously filed in a financing statement under the name South

---

[2] Subsection (5) reads as follows:

"A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not *seriously misleading.*" (Emphasis added.)

[3] MCLA 440.9403(4); MSA 19.9403(4) provides in pertinent part:

"In addition the filing officer shall index the statements according to the name of the debtor and shall note in the index the file number and the address of the debtor given in the statement."

Haven Fruit Exchange.[4] Nor would this potential creditor find anything in this search of the index to signal the need for further inquiry.

In such a situation, a secured creditor who is aware of the name change, and who therefore knows that its financing statement no longer provides even the simple notice required by MCLA 440.9402; MSA 19.9402 should no longer receive the protection of that financing statement unless there is a good faith attempt[5] to refile or amend the financing statement so that there is once again substantial compliance with the requirements of the statute.

In the instant case, Citizen's Trust, which had actual knowledge of the debtor's name change, argues that MCLA 440.9402; MSA 19.9402 does not expressly require that a secured creditor refile, or amend its financing statement where there is a subsequent change in the name of the debtor which would be seriously misleading.

However, the drafters of the code foresaw that it was impossible to articulate in express language all the rights and duties of parties which would arise from unforeseen circumstances, and specifically directed that the code "be liberally construed and applied to promote its underlying purposes and policies". See MCLA 440.1102; MSA 19.1102.

[4] The drastic nature of the change in the debtor's name here clearly distinguishes this case from those cases where there is a relatively minor error in the filing of the debtor's name or a minor change in the debtor's name. *See,* for example, *In re Excel Stores, Inc,* 341 F2d 961 (CA 2, 1965), where the debtor's name was inaccurately listed as "Excel Department Stores" rather than under the correct name, "Excel Stores, Inc". *See also In re Sofa Centre, Inc,* 18 UCC Rep Serv 536 (MD Fla, 1975); *In the Matter of Carl Lee McCoy,* 330 F Supp 533 (D Kansas, 1971).

[5] The new financing statement must be signed by the debtor, so it is possible, though seemingly improbable, that the secured creditor could not refile or amend the financing statement if the debtor was uncooperative. In such circumstances, a good faith attempt would be sufficient to preserve the secured creditor's perfected security interest.

The Official UCC Comment to article 1, § 1-102 elaborates on this directive as follows:

"This Act is drawn to provide flexibility so that, since it is intended to be a semi-permanent piece of legislation, it will provide its own machinery for expansion of commercial practices. *It is intended to make it possible for the law embodied in this Act to be developed by the courts in the light of unforeseen and new circumstances and practices.* However, the proper construction of the Act requires that its interpretation and application be limited to its reason.

\*   \*   \*

*"The Act should be construed in accordance with its underlying purposes and policies. The text of each section should be read in the light of the purpose and policy of the rule or principle in question, as also of the Act as a whole, and the application of the language should be construed narrowly or broadly, as the case may be, in conformity with the purposes and policies involved."* (Emphasis added.)

A secured party who has actual knowledge of a debtor's name change which has the effect of creating a secret lien, who does not attempt to refile or amend the financing statement is obviously thwarting the purpose of the statute.

The obvious purpose of MCLA 440.9402; MSA 19.9402 is to ensure that financing statements serve to provide simple notice to third parties of the potential prior security interest in the property of the debtor. Thus, our conclusion today is clearly within the mandates of MCLA 440.1102; MSA 19.1102. Moreover, a contrary conclusion would disrupt the simple and workable filing system envisioned by the drafters of the code, and create unnecessary uncertainty and delay in the contracting of security agreements to secure the

loans which are often so vital to success in the business world.

*b) Duty Imposed Under MCLA 440.1203; MSA 19.1203.*

A secured creditor who has actual knowledge of a debtor's name change which creates a secret lien is also under a duty to attempt to refile or amend its financing statement under MCLA 440.1203; MSA 19.1203.

This provision states that "[e]very contract or duty within this act imposes an obligation of good faith in its performance or enforcement". This duty of good faith constitutes "a basic principle running throughout this Act". Official UCC Comment to article 1, § 1-203.

Significantly, a breach of good faith can alter which party has priority in a dispute under article 9 of the code. *Thompson v United States,* 408 F2d 1075, 1084 (CA 8, 1969).[6]

In the instant dispute under article 9, the duty of good faith imposed an obligation on Citizens Trust to attempt to refile or amend its financing statement where it had actual knowledge of the creation of a secret lien which was contrary to the purposes of the filing requirements in MCLA 440.9402; MSA 19.9402.

Citizens Trust breached this good faith duty and is not entitled to priority under the secret lien resulting from its breach. Through Mr. Thomas, who was an officer of both Citizens Trust and South Haven Fruit Exchange at the time of the name change, Citizens Trust had actual knowledge

---

[6] The court in *Thompson* held as follows:

"We hold that Code § 85-1-203 permits the consideration of the lack of good faith * * * to alter priorities which otherwise would be determined under Article 9."

of the debtor's name change. That name change assured that a diligent search of the index of financing statements by Continental Oil would not bring to light Blossom Trail's prior security agreement with Citizens Trust.

In spite of Citizens Trust's knowledge of the secret lien, and in spite of the fact that there would be no great burden in moving to refile or amend its financing statement, Citizens Trust did nothing, and allowed Continental Oil to fall victim to the secret lien. In the light of these facts, we conclude that Citizens Trust breached the duty of good faith imposed by MCLA 440.1203; MSA 19.1203, and lost the priority to which it had previously been entitled.

In sum then, given the notice requirements of MCLA 440.9402; MSA 19.9402 and the good faith requirement of MCLA 440.1203; MSA 19.1203, we hold that where a secured creditor has actual knowledge of a change in the debtor's name, and where that change is seriously misleading, the secured creditor is required to make a good faith attempt to refile or amend the financing statement to reflect the change of name in order to preserve its perfected security interest.

### III—PERTINENT CASES

We reach this conclusion aware that relevant case authority is limited and conflicting. On the one hand, there is a line of cases which apply the "good faith" approach taken here today. In *In re Vieths, Inc,* 9 UCC Rep Serv 943 (ED Wis, 1971), the debtor was an individual named Kuhn who did business under the trade name Vieth's. The financing statement was filed under the name Kuhn only. At a later time, debtor incorporated his business as Vieth's, Inc., and transferred the col-

lateral to the corporation. The secured party knew of these transactions, but did nothing to remedy this creation of a secret lien.

The referee held that because the secured party, a bank, had full knowledge of the incorporation and transfer of assets which resulted in a secret lien, it was required to file a new financing statement under the corporation's name in order to preserve its perfected lien.

In *In re Kalamazoo Steel Process, Inc,* 503 F2d 1218 (CA 6, 1974), both parties entered the security agreement with the intention of taking on another name at a later time. However, the financing statement was filed under the name of the debtor at the time of the security agreement, and did not reflect the intended name change. Relying heavily on the good faith obligation laid out in MCLA 440.1203, the Sixth Circuit held that the secured creditor had not perfected its interest:

"In the present case, once the debtor changed its name from Roman Industrial Corporation to Kalamazoo Steel Process, a diligent search of the index of financing statements in the office of the Secretary of State would not have disclosed the prior lien. We are persuaded that H. O. U. lost its perfected security interest in the collateral of the debtor when its name was changed to Kalamazoo Steel Process. When a secured party has knowledge at the time the security agreement is executed that the debtor intends to change its name, and the new name is known to him, the secured party must act in good faith to insure that the filing under the Code not only discloses the current and correct name of the debtor but also reflects the pending name change of which the parties are aware." 503 F2d 1218, 1221–1222.

*Kalamazoo* in this quotation elucidates the reason and the conclusion of the opinion:

1. A substantial change in name vitiates notice

because the index system cannot work to give notice.

2. A secured person who has knowledge of such change must in good faith insure a filing that does give notice.

It so happened that in *Kalamazoo* the secured party had knowledge at the time of execution of the original security agreement, but that fortuitous situation changes neither the reason nor the necessary conclusion therefrom. Consequently, the rule can validly be stated that whenever a secured party has knowledge of a change in name of the debtor so substantial that the index will not disclose the filing that would give notice, the secured party must in good faith attempt to insure a new or amended filing that will give notice.

Finally, *In re Conger Printing Co, Inc.,* 18 UCC Rep Serv 224 (D Or, 1975), involved the sale of a business where the seller and the secured party agreed to surrender the name of the corporation to the debtor and that the debtor could incorporate the business and transfer the collateral and the name to the new corporation. The financing statement listed the corporate name as the secured party and the personal name of the buyer as the debtor. The secured party knew that the buyer intended to transfer the collateral and assume the corporate name, but did not have knowledge that these transactions actually took place. The court found that the secured party's interest was not perfected:

"The secured party had a duty to anticipate in the financing statement that the authorized transfer [of collateral to the new corporation] may be made, to inquire if it had been made, and to file a financing statement designating the bankrupt [corporation] as the ultimate debtor. This duty neither ceased nor was

satisfied when he filed the financing statements which named only an interim debtor. Under these circumstances, the secured party could not escape this responsibility which is imposed by ORS 71.2030 and ORS 79.4020(1) by filing the initial financing statement with the county in the name of Mr. Lavell [the buyer], and by later closing his eyes, when he had a duty to look and a duty to insure that the financing statements were not misleading." 18 UCC Rep Serv 224, 229.

*Kalamazoo Steel Process* and *Conger Printing* are somewhat distinguishable from the instant case in that the secured parties knew of the intended name change at the time of the filing of the financing statements. However, we can see no reason why the policy of preventing secret liens manifest in MCLA 440.9402; MSA 19.9402 and the good faith obligation set out in MCLA 440.1203; MSA 19.1203 should not require the same result where the secured party has actual knowledge of a subsequent change in the debtor's name, and where that name change is "seriously misleading".[7]

My Brother Fitzgerald relies on another line of authority which we do not believe carries out the intent of MCLA 440.9402; MSA 19.9402 and MCLA 440.1203; MSA 19.1203. *In re The Grape Arbor, Inc,* 6 UCC Rep Serv 632 (ED Pa, 1969), involves a change in the debtor's name which occurred after the filing of the financing statement. The secured

---

[7] The author of Note, *The Effect of Errors and Changes in the Debtor's Name on Article Nine Security Interests,* 1975 Duke L J 148 (1975), agrees with this analysis. In discussing *Kalamazoo Steel Process,* he states as follows:

"Although the court was careful to emphasize that its decision did not reach the situation where the secured party learns of the new name after filing the financing statement, its sensitivity to the need for an accurate identification of the debtor and its conception of good faith as at times requiring affirmative action on the part of the secured party strongly indicate that a similar good faith test would be applied in the *G[AC]* situation." 1975 Duke L J 148, 158.

creditor did not refile or amend the financing statement, and yet the court held that its security remained perfected. However, in that case, the secured party was unaware of the debtor's name change, making it clearly distinguishable from the instant case.

The leading case supporting defendant's position is *In re GAC,* 11 UCC Rep Serv 412 (WD Mich, 1972). In this case, the court held that the secured party was under no duty to refile its financing statement even where it was aware of the debtor's name change.

The rationale of the court in *GAC* is unpersuasive, however, for reasons outlined in a recent law review analysis of the case.[8] The court reasoned first that the secured party should not be burdened with the requirement of proving a negative, *i.e.,* lack of knowledge. However, this argument is easily met by requiring that the party seeking to avoid the security interest carry the burden of proving the actual knowledge of the secured party.

Second, the court argued that it might be impossible to obtain a new financing statement, since the debtor must sign such a statement, and might be uncooperative. However, the good faith standard would protect the secured party in such a situation, for if there was a good faith effort by the secured party to refile, its perfected security interest would be preserved, whether this effort was successful or not.

Finally, the court asserted that inquiring parties were under a duty to inquire about any prior name change of debtor. Such an assertion is contrary to the central concept that it is the financing statement which is intended to put file searchers on inquiry. There should be no requirement to

[8] *Id.*

search outside the filing office unless there is something in the filing which would put the interested party on notice of the need for further inquiry. See *The Effect of Errors & Changes in the Debtor's Name on Article Nine Security Interests,* fn 7 *supra;* White & Summers, Handbook of the Law Under the Uniform Commercial Code (1972), § 23-16, p 833; Coogan, *Public Notice under the Uniform Commercial Code & Other Recent Chattel Security Laws, Including "Notice Filing",* 47 Iowa L Rev 289, 318, fn 100 (1962); *In re Kalamazoo Steel Process, Inc, supra,* at 1224.

*In re Pasco Sales Co, Inc,* 77 Misc 2d 724; 354 NYS2d 402; 14 UCC Rep Serv 1059 (1974), follows *GAC* in holding that there is no duty on the part of the secured party to refile even where it had knowledge of the name change, and is subject to the same criticism outlined above. It is also notable that the court apparently did not consider the possible effect of the good faith provision in § 1-203, for this provision is not even mentioned in the opinion.

The *GAC* approach is at odds with the notice requirements of MCLA 440.9402; MSA 19.9402; the rule of liberal construction mandated by MCLA 440.1102; MSA 19.1102; and the duty of good faith imposed by MCLA 440.1203; MSA 19.1203. We unequivocally reject that approach.

My Brother Fitzgerald suggests that we leave it to the Legislature to remedy the problem of the secret lien created by a change in the debtor's name. Specifically, he points to an amendment to article 9, 9-402 of the UCC proposed by the drafters of the code in 1972:

"Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously

misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed before the expiration of that time." UCC Rep Serv, Current Materials, Uniform Code, Appendix-Article 9, Revised Article 9 of the Uniform Commercial Code (1972), pp 130–131.

In response, it should be noted that this proposal is much broader than the good faith approach outlined here. Under the terms of the 1972 proposal, all secured creditors would in effect be required to determine every four months whether its debtor had changed its name, identity, or corporate structure, and refile or amend the financing statement if there was such a change.

Under the good faith approach, the only duty imposed falls upon secured creditors with actual knowledge of a seriously misleading name change. Only in these circumstances is the secured creditor obliged to attempt to refile or amend its financing statement.

The 1972 proposal, which would place a burden on all secured creditors to check for changes in the names of their debtors, is clearly beyond the present scope of MCLA 440.9402; MSA 19.9402. The good faith approach, however, is required by the purposes and mandates of MCLA 440.9402; MSA 19.9402 and MCLA 440.1203; MSA 19.1203 as they presently stand. In taking this approach, we simply fulfill our duty to interpret the intent of the drafters of the code through an examination of the language of the statutes before us. There is no interference here with the right of the Legislature to expand the duty of secured creditors by enacting the 1972 proposal.

In point of fact, however, the Legislature has for the time being seemingly rejected the more bur-

densome approach of the 1972 proposal. The Legislature recently passed 1976 PA 27 which amended various sections of article 9. While the 1972 proposed amendment to MCLA 440.9402; MSA 19.9402 was originally part of 1976 PA 27, it was deleted from the enactment before passage.

## IV—Conclusion

We hold that where a secured creditor has actual knowledge of a change in the debtor's name, and where that change is seriously misleading, the secured creditor is required to make a good faith attempt to refile or amend the financing statement to reflect the change of name in order to preserve its security interest. The Court of Appeals and the trial court are reversed.

Kavanagh, C. J., concurred with Williams, J.