In the Matter of Jay W. HEMMINGER, i/a/d/b/a Somerset Farmers Supply, Debtor.

Jay W. HEMMINGER, i/a/d/b/a Somerset Farmers Supply, Plaintiff,

v.

ALLIED FARM EQUIPMENT; American Acceptance Corp.; Ariens Credit Corporation; Borg-Warner Acceptance Corp.; Deutz Corporation; Hamilton Equipment, Inc.; Jacques Seed Company; Owatonna Manufacturing Co., Inc.; Owatonna Manufacturing Company Acceptance, Inc.; Piper Industries, Inc.; West Central Production Credit Association; Robert R. Singo & Betty Jane Singo; Stull Company; United States National Bank; United States of America, Small Business Administration, Defendants.

Bankruptcy No. 81–2512.
Adv. No. 82–522.

United States Bankruptcy Court,
W. D. Pennsylvania.

May 10, 1982.

Christopher Beck, Pittsburgh, Pa., for debtor.

Vincent Barbera, Somerset, Pa., for Singos.

Thomas Zwilling, Pittsburgh, Pa., for U. S. Bank of Johnstown.

MEMORANDUM OPINION

GERALD K. GIBSON, Bankruptcy Judge.

The matter presently before the Court is debtor's complaint to sell property at adversary number 82–522, wherein two secured creditors dispute the validity, priority and extent of their relative security interests in the assets proposed for sale. The narrow issue presented in the case at bar is the continued effectiveness of a financing statement under Article Nine of the Uniform Commercial Code when debtor changes his trade name subsequent to the secured creditor's filing of the statement.

Defendants Robert and Betty Jane Singo argue that their security interest in debtor's assets remains perfected notwithstanding the post-filing change of debtor's trade name. Defendant, United States National Bank of Johnstown, argues that since the Singos' financing statement described collateral as assets of debtor's business under its original name, the financing statement is insufficient to perfect a security interest in assets of the same business operating under a new name.

For the reasons that follow, the Court concludes that the Singo financing statement and security agreement comply with the requirements of Article Nine of the Uniform Commercial Code, 13 Pa.C.S.A., and therefore secure the collateral described therein. As between the Singos and the United States National Bank of Johnstown, the Court resolves the present dispute be-

tween secured creditors in favor of the Singos, pursuant to 13 Pa.C.S.A. 9312(e)(1) of the Uniform Commercial Code.

The relevant facts are as follows. In January, 1976, plaintiff Jay W. Hemminger entered into an Agreement of Sale with Robert and Betty Jane Singo, (hereinafter "Singos"), for the purchase of real estate, accounts receivable, inventory, and other personal property of a business known as "Singo Feed." Of the $370,000.00 purchase price, a sum of $100,800.00 was paid at the closing. The remaining balance was due over a fifteen year period in yearly installments of $17,946.67 plus eight percent interest. To date, plaintiff has made all payments with the exception of that due in February, 1982. As security for their loan, the Singos retained legal ownership of the real estate. The Agreement of Sale further provided for the Singos' retention of a security interest in specified property relating to the business.

On February 5, 1976, the Singos filed a financing statement in the Office of the Recorder of Deeds for Somerset County; Office of the Prothonotary of Somerset County; and Secretary of the Commonwealth of Pennsylvania. The financing statement listed Jay W. Hemminger, in his individual capacity, as debtor. The Singos were listed as the secured parties; and the collateral was described as follows:

"Motor vehicles, machinery, equipment, office trailer, office furniture and furnishings, shelving, inventory of feed, medications, fertilizers and farm supplies situate on the premises formerly owned by Secured Parties in Somerset Boro., Somerset County, Pa., used by debtor trading as "SINGO FEED", and accounts receivable of said business."

Debtor, herein plaintiff, also signed a judgment note for the unpaid balance of the purchase price of "Singo Feed" in the amount of $269,200.87.

On February 4, 1976, plaintiff entered into an agreement with the United States National Bank of Johnstown, (hereinafter "the Bank"), for the loan of $100,000.00, on which no payment is currently due. Said amount was applied as a down payment on the purchase price of "Singo Feed." Plaintiff and the Bank executed a note which provided that the note of the Singos was junior to that of the Bank as to all property other than the assets of the business known as "Singo Feed"; and further, that the note of the Bank was junior to that of the Singos as to all property and assets known as "Singo Feed". Thus it is clear that the Bank had actual knowledge of the provisions of the Singo-Hemminger sale and security agreement.

In November, 1979, and January, 1981, the Bank loaned additional funds to plaintiff, for which it took a security interest in Hemminger's property known as "Somerset Farmers Supply Co.", a continuation of "Singo Feed". On February 2, 1981, the Bank filed a financing statement, wherein Jay W. and Carolyn Hemminger, t/a Somerset Farmers Supply Co. were listed as debtors. The Bank was listed as the secured party, and the collateral was described as follows:

"lien on machinery and equipment, excluding automotive, furniture and fixtures, inventory, accounts receivable, books, records, invoices, contract rights, chattel paper, documents, instruments, general intangibles, now owned and hereafter acquired, and proceeds thereof; including but not limited to insurance proceeds."

On September 23, 1981 Jay W. Hemminger, d/b/a Somerset Farmers Supply filed a petition under Chapter 11 of the Bankruptcy Code. Presently before the Court is plaintiff's complaint to sell property, wherein plaintiff discloses an offer to purchase certain of his assets from "Somerset Farmers Supply". The assets to be sold include all assets secured by the Singos to the extent of Singos' security interest in the same; and various vehicles and records secured to the Bank. The assets are more specifically described as follows:

(1) real estate

(2) machinery, equipment, office trailer, office furniture, furnishings and shelving, certain motor vehicles

(which have been subsequently released in favor of Bank's security interest), inventory and feed, medications, fertilizer, farm supplies and accounts receivable known as SINGO FEED.

(3) vehicles as follows: 1971 Chevrolet Truck; 1974 International Truck; 1974 Ford Truck; 1979 Dodge Truck; and 1979 Chevrolet Truck (serial numbers omitted).

(4) Books, records, invoices and other documents constituting the business records of "Somerset Farmers Supply".

It is further stated in the complaint that the categories of assets in which Singos have a security interest shall be sold only to the extent of the full amount of the Singos security interest on a priority basis as follows:

a) all real estate, machinery, equipment, office furniture, furnishings, shelving, inventory of feed, medications, fertilizers and farm supplies; and

b) accounts receivable to the extent necessary to bring the total value of the items purchased up to the full amount of the Singos' secured debt.

As stated in the complaint, the assets in paragraphs (1) and (2) shall be paid by the Purchaser's assumption of debt to Singos, and the payment of the February, 1982 installment plus interest. Payment of $11,-000 shall be made to the Bank by Purchaser for the assets described in paragraphs (3) and (4).

The conditions of sale require the provision of the following material at the time of sale: a complete inventory of all property subject to the Singos' security interest; a list of all outstanding receivables at the time of sale; and a list of all receivables which have been collected and placed in the escrow account.

In its complaint, plaintiff requests the Court's entry of an order divesting any security interests of the named defendants; and their transfer to a fund to be derived from the sale pending a later determination as to their respective priority, validity and extent, except to the extent that certain liens and debts are assumed by the Purchaser.

The Court now reaches the narrow issue before it: whether the Singos continue to have a perfected security interest in assets of the debtor as described in the 1976 financing statement, notwithstanding the debtor's change of trade name from that contained therein.

The Singos contend that since their security interest was properly perfected under the Uniform Commercial Code, and filed first in time, it has priority over that of the Bank. On the other hand, the Bank argues that the terms of the 1976 Singo security agreement and financing statement create and perfect a security interest only in assets of the debtor trading as "Singo Feed", and not in the assets of the debtor trading as "Somerset Farmers Supply". According to its argument, the debtor's change of name subsequent to the Singos' filing rendered the Singos' financing statement, wherein collateral was described as assets of "Singo Feed", ineffective. Since the Singos' security interest is ineffective, the Bank further argues that it has first priority lien on the assets (other than real property) proposed for sale.

The Court disagrees. For the reasons that follow, the Court concludes that the 1976 Singo security agreement and financing statement comply with the requirements of Article Nine of the Uniform Commercial Code. The Court further finds the following. The designation "used by the debtor t/a SINGO FEED" which appears in the financing statement description of the collateral was not seriously misleading to creditors despite debtor's late change of trade name. Further, the Bank had actual knowledge of the terms of the Singo-Hemminger Agreement of Sale. Therefore, it is implausible that the notice provided by the financing statement was insufficient or misleading. Additionally, the Uniform Commercial Code, as adopted in Pennsylvania, imposes no duty upon a secured creditor to amend a financing statement subse-

quent to a debtor's change of trade name. This is particularly true for a financing statement indexed under debtor's true name, as in the present case, for the likelihood of misleading creditors is minimal.

An examination of the provisions of Article Nine and the case law thereunder reveals the following. The Uniform Commercial Code adopts a system of "notice filing", which requires only the filing of a simple notice indicating that a secured party may have an interest in the collateral described. *In re Platt*, 257 F.Supp. 478, 3 UCCRS 719 (E.D.Pa.1966).

Section 9402(a) of the Uniform Commercial Code, 13 Pa.C.S.A., provides that a financing statement is sufficient if it is signed by the debtor and secured parties; gives an address of the secured party from which information concerning the security interest may be obtained; gives a mailing address of the debtor; and contains a statement indicating the types, or describing the items of collateral. Section 9402 further provides that a financing statement in substantial compliance with the above requirements is effective, even though it contains errors which are not seriously misleading.

■ Section 9110 states that the description of personal property is sufficient if it "reasonably identifies what it describes." This test is essentially the same for a financing statement as for a security agreement. *Klingner v. Pocono International Raceway, Inc.*, 289 Pa.Super. 484, 433 A.2d 1357, 31 UCCRS 1223 (1981). The description need not be specific or exact, as long as it provides creditors with sufficient notice to inquire further. *Heights v. Citizens Nat. Bank*, 463 Pa. 48, 342 A.2d 738, 17 UCCRS 337 (1975). Exact and detailed descriptions have been rejected by the Code. A financing statement which generates further inquiry is sufficiently descriptive; (*In Re Varney Wood Products*, 458 F.2d 435, 10 UCCRS 513 (4th Cir. 1972), for the purpose of the financing statement is merely to warn creditors, rather than identify collateral. The UCC puts the burden on the creditor to seek clarification. *Thorp Commercial Corp. v. Northgate Industries, Inc.*, 654 F.2d 1245, 31 UCCRS 801 (8th Cir. 1981).

■ Against this general background, the Court now looks to the issue of the sufficiency of the financing statement description when the debtor undergoes a change of name subsequent to the secured creditors filing of the statement. It has been held that a secured creditor has no duty to refile a financing statement upon learning of a debtor corporation's change of name. *In re Thermal Barriers, Inc.*, 8 B.R. 294, 31 UCCRS 364 (E.D.Mich.1981). Accord: *In re Grape Arbor*, 6 UCCRS 632 (E.D.Pa.1969). Nor does the secured creditor have a duty to amend the financing statement to reflect the dissolution of a partnership and subsequent name change. *In re Miraglia*, 11 B.R. 77, 31 UCCRS 1196 (Bkrtcy.W.D.N.Y.1981).

The Bank relies on a contrary holding in *In re Kalamazoo*, 503 F.2d 1218 (6th Cir. 1974), which can be readily distinguished on the basis of its facts. In that case, the entity was a corporation; and the secured party had knowledge of the debtor's new name prior to the filing of the financing statement. In that instance, filing and indexing under the original corporate name was misleading and an indication of secured party's bad faith.

Recently, a number of states have adopted § 9–402(7) of the Uniform Commercial Code, (Pennsylvania not included), which addresses the secured creditor's duty to alter financing statements upon the debtor's change of name or structure. The section, in pertinent part, provides as follows:

"Where the debtor so changes his name, or in the case of an organization, its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed before the expiration of that time."

Pennsylvania has declined to enact this section of the Uniform Commercial Code.

As stated by Judge Washabaugh in *In Re Serrins Automotive Warehouse,* 18 B.R. 718, 29 UCCRS 1418 (Bkrtcy.W.D.Pa.1980) "refusal of the legislature to adopt such amendment results in the reaffirmation of the existing law to the effect that the security interest continues after the name change goes into effect." (p. 1421)

Other courts have similarly declined to impose upon a secured creditor a duty to refile upon debtor's name change when no such requirement appears in their version of the UCC. *Continental Oil Co. v. Citizens Trust and Sav. Bank,* 397 Mich. 203, 244 N.W.2d 243, 19 UCCRS 1234 (1976).

In this light, the Court now considers a decision of the Missouri Court of Appeals, which is directly on point. The facts of *Drysdale v. Cornerstone Bank,* 562 S.W.2d 182, 23 UCCRS 1072 (Mo.App.1978) are as follows. In November, 1970, plaintiff sold business known as "Drysdale Ford Sales, Inc." to McAdams. McAdams obtained financing from the Bank for the purchase of said business. As security for its loan, the parties executed a security agreement. In November, 1970, the Bank filed a financing statement which listed debtors' names as "Sam and Anna McAdams, d/b/a Drysdale Ford Sales." The description of collateral was as follows: "All contents of DRYSDALE FORD SALES, Southwest City, Missouri, including all parts, shop equipment, . . .". From March 31, 1970, debtor did business as "McAdams Ford", a sole proprietorship. In 1975, plaintiff loaned funds to McAdams whereupon debtor granted plaintiff a security interest in debtor's equipment.

Plaintiff argues that the Bank's 1970 financing statement, filed prior to debtor's name change, wherein collateral is described as "assets of DRYSDALE FORD SALES" is insufficient and seriously misleading, for it gives creditors no notice that assets of McAdams Ford were encumbered.

The Missouri Court of Appeals holds that the secured creditor, who filed a financing statement under debtor's true name, wherein collateral was described as assets of a trade name later changed, continued to have a perfected security interest in the named assets. The post-filing change of debtor's name was not sufficient to render the secured party's perfected security interest ineffective.

This Court reaches the same conclusion. Based on the foregoing, the Court concludes that the 1976 Singo financing statement and security agreement comply with the provisions of Article Nine of the Uniform Commercial Code, 13 Pa.C.S.A. Accordingly, the Singos have a perfected security interest in the specified assets of debtor's business. Since the Singos' perfection by filing was prior in time to that of the Bank, the Singos prevail on the basis of 13 P.C.S.A. 9312(e)(1).

An appropriate order will be entered.