In re Ronald D. WALKINGTON, d/b/a Center-Four Farms, Debtor.

James D. ROBBINS, Trustee Plaintiff/Counter-Defendant

v.

PRODUCTION CREDIT ASSOCIATION OF LANSING Defendant/Counter-Plaintiff.

Bankruptcy No. HG 83 1133. Adv. No. 85 848.

United States Bankruptcy Court, W.D. Michigan.

July 25, 1986.

See also, Bkrtcy., 42 B.R. 67.

Deanna S. Swisher, Michael W. Donovan, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, Mich., for plaintiff/counter-defendant.

Peter A. Teholiz, Hubbard, Fox, Thomas, White & Bengtson, P.C., Lansing, Mich., for defendant/counter-plaintiff.

## OPINION

### CLASSIFICATION OF COLLATERAL PAYMENT OF INTEREST DURING PREFERENCE PERIOD

LAURENCE E. HOWARD, Bankruptcy Judge.

The defendant, Production Credit Association of Mid-Michigan, formerly known as Production Credit Association of Lansing, ("PCA"), has brought this motion for summary judgment. By this motion PCA seeks to establish that its security interest in grain was properly perfected and that payments it received are not avoidable as preferences under 11 U.S.C. § 547(b). In response, plaintiff James D. Robbins, Trustee, has requested summary judgment in his favor on both these issues.

A comparison of the Complaint and Answer reveals that the following facts are not disputed. On December 22, 1980, the debtor, Ronald D. Walkington, d/b/a Center-Four Farms, granted PCA a security interest in his equipment, livestock and all harvested and processed crops. On March 23, 1982, debtor granted a security interest in twenty head of Holstein cows and 9500 bushels of corn to the PCA. Financing Statements were filed with the Register of Deeds for Ionia County, but not with the Secretary of State's office.

On March 1, 1983, within 90 days of the eventual filing of the petition for relief, the debtor transferred $3,000.00 to the PCA. (Complaint and Answer, paragraphs 25 and 26.)

The debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on April 28, 1983. At the time of the filing of the petition the debtor had an unstated quantity of grain stored at the Portland Cooperative Company of Portland, Michigan. (Complaint and Answer, paragraphs 8–10, 12.) The case was converted to one under Chapter 7 on January 18, 1984. The Trustee instituted this adversary proceeding in order to avoid PCA's lien as to all the grain stored at the Portland Cooperative and to avoid as a preference the $3,000.00 paid to PCA.[1]

## I. CLASSIFICATION OF GRAIN

The PCA contends that its lien was properly perfected as to the stored grain because those crops were "farm products" under M.S.A. § 19.9109(3) [M.C.L.A. § 440.-9109(3)] (U.C.C. § 9–109(3)), and therefore the proper place to file the financing statement under M.S.A. § 19.9401(1)(a) [M.C.L.A. § 440.9401(1)(a)] (U.C.C. § 9–401(1)(a)), was locally with the Ionia County Register of Deeds as was done. The Trustee disagrees, asserting that the stored grain was "inventory" under M.S.A. § 19.-9109(4) [M.C.L.A. § 440.9109(4)] and therefore the proper place to file was the office of the Secretary of State under M.S.A. § 19.9401(1)(c) [M.C.L.A. § 440.9401(1)(c)]. The Court rejects PCA's description of the stored grain as "farm products:" grain bailed at a cooperative is "inventory." Nonetheless, an issue of material fact exists as to whether the grain was ever subject to a perfected security interest. Therefore summary judgment must be denied on both motions.

As to PCA's motion for summary judgment, the Court must assume that the grain was already stored at the cooperative when the debtor granted PCA its security interest.[2] In that event, PCA's security interest would not be perfected as to the stored grain unless that grain could be classified as "farm products," as to which a creditor must file locally as PCA did.

Goods are "farm products," according to § 19.9109(3) [M.C.L.A. § 440.9109(3)], "if they are crops ... or supplies used or produced in farming operations ... and if they are in the possession of a debtor engaged in raising, fattening, grazing or other farming operations." PCA concedes that the grain in question was not in the debtor's actual possession, but argues that it was in his constructive possession and local filing was therefore appropriate under *Schneider v. Ray (In re Roberts)*, 38 B.R. 128 (Bankr.D. Kansas, 1984). The *Roberts* court held that "grain owned and stored by a farmer, in which any negotiable or nonnegotiable warehouse receipts are in the farmers (sic) possession, is 'possessed' by the farmer and is a 'farm product.'" 38 B.R. at 133. The *Roberts* court grounded this holding upon its belief that "possession" should be broadly construed, a position endorsed by University of Kansas Professor Keith Meyer in his article *Potential Problems with the Use of "Crops" as Collateral for an Article 9 Security Interest*, 1981–82 Agri.L.J. 115, 116–119 (also published with slight differences as *"Crops" as Collateral for an Article 9 Security Interest and Related Problems*, 15 U.C.C. L.J. 3, 5–8 (1982)). Professor Meyer finds support for this broad interpretation of "possession" in certain inferences he draws from other sections of the U.C.C. He believes that U.C.C. § 9–205, which allows a debtor significant control over property, suggest this result. Professor Meyer also sees support in U.C.C. § 9–305, which provides that "[i]f such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee received notification of the secured party's interest." Professor Meyer admits that § 9–305 concerns only perfec-

---

1. The Trustee has conceded that another transfer he sought to avoid, of $450.79, made on March 18, 1983, is not in fact avoidable under 11 U.S.C. § 547(b)(5). (Plaintiff's Brief in Opposition, page 9).

2. The Court realizes that this assumption is rather improbable, but it is necessary as the record does not disclose when the grain was stored.

tion, but believes an argument can be made to extend this rationale to § 9–109.[3] Professor Meyer also cites Professor Gilmore who has written that "goods cease to be 'farm products' when they are subjected to any manufacturing operation ... or when they move from the *possession and ownership* of a farmer to that of a non-farmer (canner, cooperative, etc.)" (emphasis added by Meyer) and that " '[f]arm products' are in effect a farmer's inventory." ... 15 U.C.C.L.J. at 6–8, quoting 1 Gilmore, *Security Interests in Personal Property*, at 374, 734 (1965).

Although this Court has great respect for Professors Gilmore and Meyer, it believes the first place to look for an explanation of § 19.9109 [M.C.L.A. § 440.9109] is in the accompanying Official Comment. At point 4 the Official Comment provides, in part, that

> Goods are "farm products" only if they are in the possession of a debtor engaged in farming operations ... Products of crops or livestock remain farm products so long as they are in the possession of a debtor engaged in farming operations and have not been subjected to a manufacturing process ... When crops or livestock or their products come into the possession of a person not engaged in farming operations they cease to be "farm products." If they come into the possession of a marketing agency for sale or distribution or of a manufacturer or processor as raw materials, they become inventory.

It is clear that these comments do not support a broad interpretation of possession. The comments do not discuss "possession and ownership" as does Professor Gilmore, but focus on possession alone. Nor does the Court believe the omission of "ownership" from the comment to be inadvertent; when the drafters wished to focus on ownership they said so. *See*, U.C.C. § 9–402, Draftsmen's Comment to 1972 Official Text, point 8. Indeed, the Comment to § 19.9109 [M.C.L.A. § 440.9109] implicitly rejects "constructive possession," stating that "if [crops] come into the possession of a marketing agency for sale or distribution ... they become inventory." A principal still "owns" property he has entrusted to an agent unless the principal also confers title upon the agent. 3 Am Jur 2d, *Agency* §§ 66, 105. Since "one of the prime elements of a agency relationship is the existence of some degree of control by the principal over the conduct and activities of the agent," 3 Am Jur 2d, *Agency* § 2, the principal might be said to be in constructive possession of property entrusted to an agent. Nevertheless, the comment indicates that once farm products come into an agent's possession they become inventory. In either the farmer's hands or the agent's the crops are held for sale and are subject to the farmer's control. The only difference is who has actual possession of the crops.

■■■ The debtor stored grain at the Portland Cooperative. Although the PCA has not admitted this transaction to be a bailment (Answer, paragraph 15), the Court believes that under Michigan law a bailment must be presumed until proven otherwise. *Ledyard v. Hibbard*, 48 Mich. 421, 12 N.W. 637 (1882). Bailment requires the delivery of personal property in trust to a bailee, a full delivery which excludes the possession of the owner, as both possession and control pass from the bailor to the

---

**3.** In this case, however, we are concerned with goods. Further, there is no indication on the record that Portland Cooperative was notified of PCA's interest, and the Trustee alleges such notification was never given to the Cooperative. Indeed, PCA would appear to admit that it was not named as a secured lender on the warehouse receipts, but believes it should prevail nonetheless. (Defendant's Brief in Support of Motion, page 5.) PCA cites *Douglas-Guardian Warehouse Corporation v. Esslair Endsly Co.*, 10 U.C.C.Rep.Ser. 176 (W.D.Mich.1971) for sup-

port. However, *Douglas-Guardian* held that "perfection under non-negotiable warehouse receipts occurs 'by issuance of the document in the name of the secured party or by bailee's receipt of notification of the secured party's interest.' M.S.A. 19.9304(3)." 10 U.C.C.Rep. Serv. at 186. Although the record is not as complete as it could be, PCA apparently was not named on the warehouse receipts and the Court must assume, as to PCA's motion for summary judgment, that the Portland Cooperative was never notified of PCA's interest.

bailee. *Orton v. Markward & Karafilis Inc.*, 83 Mich.App. 548, 551, 269 N.W.2d 219 (1978). Since crops must be in the debtor's possession in order to be farm products, and as bailed crops cannot be in the bailor's possession, the crops stored at Portland Cooperative, therefore, were not farm products. Rather, as the quote above from the Official Comment indicates, the grain was inventory under M.S.A. 19.-9109(4) [M.C.L.A. § 440.9109(4)], which includes not only goods held for sale, but also "materials used or consumed in a business." It is agreed that this grain was held by the debtor for use as feed for his cattle (Affidavit of Deborah A. Gorter, paragraph 5). The proper place to file a financing statement concerning inventory is with the Secretary of State's office. M.S.A. § 19.9401(1)(c) [M.C.L.A. § 440.-9401(1)(c)]. If the grain was in storage at the Portland Cooperative when the security interests were granted to PCA and if no financing statement was filed with the Secretary of State, then PCA never perfected its interest in the stored grain.[4]

■ Turning to the Trustee's motion for summary judgment, the Court must assume that when the security interests were granted the grain in question was in the debtor's actual possession, therefore "farm products" subject to the PCA's perfected security interest before the transfer of possession to the cooperative. The question then becomes whether a subsequent change in classification of collateral, and a resulting change in the prescribed location for filing, will render a perfected security interest unperfected. Judge Nims of this district has held that a subsequent change in the debtor's name will not render a perfected security interest unperfected. *In re Gac*, 11 U.C.C.Rep.Ser. 412 (Bankr.W.D. Mich.1972). The Michigan Supreme Court has taken the same position. *Continental Oil Company v. Citizens Trust and Savings Bank*, 397 Mich. 203, 244 N.W.2d 243 (1976). Subsequently, the Michigan Legislature amended M.S.A. § 19.9402(7) [M.C. L.A. § 440.9402(7)] by adopting the 1972 U.C.C. Official Text revisions, which provided that when a debtor changes its name a financing statement filed under the old name will not be effective as to collateral acquired more than four months after the creditor is notified of the change; the implication is that such a financing statement will continue in effect as to all collateral acquired up to four months after notification.[5] This Court believes that if a change

**4.** Furthermore under M.S.A. § 19.9109(3) [M.C. L.A. § 440.9109(3)] crops subjected to a manufacturing process more extensive than pasteurizing milk or boiling sap down to syrup loose their status as farm products. The grain in question here has been referred to as the debtor's "feed bank." (Defendant's Brief in Support of Motion, page 2.) The Court believes it can take judicial notice of the statutes of other states, and Ohio Revised Code § 926.011 defines a "grain bank" as an agricultural commodity stored "under a bailment agreement with the commodity normally returned to the bailor at a later date as an ingredient of a *processed feed.*" (emphasis added.) Goods subjected to a manufacturing process would not be "farm products" even in a farmer's actual possession. M.S.A. § 19.9109 [M.C.L.A. § 440.9109], Comment 4. Therefore, local filing might not be appropriate as to such goods, which may be inventory. The Court does not know whether the grain in question here was 'processed' in any way, nor whether such processing would rise to the level of a manufacturing process. However, these factual questions would also preclude summary judgment for PCA.

**5.** Although the Court finds guidance in M.S.A. § 19.9402(7) [M.C.L.A. § 440.9402(7)], the last sentence of that section is not applicable here, despite the arguments of PCA to the contrary. The last sentence provides that "[a] filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer." The Comment explains, however, at point 8, that this sentence concerns transfers of ownership from one debtor to another, and has been so interpreted. *Citizens Savings Bank v. Sac City State Bank*, 33 U.C.C.Rep.Serv. 98, 315 N.W.2d 20 (Iowa 1982). The instant case involves a transfer of possession, not ownership. Nor is M.S.A. § 19.9401(3) [M.C.L.A. § 440.-9401(3)] applicable. That section provides, *inter alia*, that a filing continues effective even though the use of the collateral changes. A change in classification may not be a change in "use", but even assuming it is, § 19.9401(3) [M.C.L.A. § 440.9401(3)] does not apply. According to the accompanying Comment, point 6, that "subsection is important only when local filing is required, and covers only changes between local filing units in the State." This case

in name will not render a perfected security interest unperfected neither will a change in the classification of the collateral.

■ Therefore, an issue of material fact remains: whether the grain was ever a farm product subject to the PCA's security interest. A creditor's interest, if once perfected, does not become unperfected by a change of possession from the debtor to the Cooperative.

## II. LOAN INTEREST

The Trustee's Complaint seeks to set aside the payment of $3,000.00 received by PCA as a preference under 11 U.S.C. § 547(b). PCA has moved for summary judgment on this portion of the Complaint, asserting that as a matter of law it can find protection within § 547(c)(2) which formerly provided that the Trustee could not avoid a transfer to the extent that the transfer was:

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms.

Although § (c)(2)(B), the 45 day rule, was deleted by the Bankruptcy Reform Act of 1984, Pub.L. No. 98–353, it still applies to this case, Pub.L. No. 98–353, § 553(a), and is the issue upon which the parties' disagreement as to the applicability of § (c)(2) hinges. As this is a motion for summary judgment, the Court must assume the payment was applied to unsecured, not secured, debt, and therefore was otherwise preferential. *Spence v. Lansing Automakers Federal Credit Union (In re Satterla)*, 15 B.R. 166, 5 C.B.C.2d 664 (Bankr. W.D.Mich.1981).

■ The Eighth Circuit has held that interest on a loan is not incurred under § (c)(2)(B) until the day on which the interest accrues. *Iowa Premium Service Co., Inc. v. First National Bank in St. Louis (In re Iowa Premium Service Co., Inc.* 695 F.2d 1109, 1112 (8th Cir.1982). It is not until that day, *Iowa Premium* held, that the debtor is legally bound to pay, since the debtor could repay the debt and thereby avoid incurring any liability for unaccrued interest. This holding has been criticized on the ground that the debt is incurred when the money is lent, and the debtor also incurs a contingent obligation for interest at the same time. *See, e.g., Wickham v. United American Bank, et al. (In re Property Leasing and Management, Inc.)*, 46 B.R. 903, 12 C.B.C.2d 410 (Bankr.E.D. Tenn.1985). However, the same is equally true, if not more so, of a rental situation. When you sign a lease you incur a contingent obligation to pay the rent. Yet § (c)(2) developed from the judicially created "current expense" rule, which permitted the payment of rent. Kaye, *Preferences Under the New Bankruptcy Code*, 54 Am.Bankr.L.J. 197, 201–205 (1980). Furthermore, this Court has held that rent is exempted by § (c)(4) from the reach of the trustee's avoidance powers. *Remes v. Yeomans (In re Quality Plastics, Inc.)* 41 B.R. 241 (Bankr.W.D.Mich.1984), *aff'd*, No. K84–332 CA4 (W.D.Mich. May 9, 1986). In *Quality Plastics* this Court rested its analysis, in part, upon *Iowa Premium* and can see no reason to abandon it now. For the purposes of § (c)(2) this Court can see no significant difference between the accrual of rent upon property and the accrual of interest upon money. Therefore, payments made upon interest obligations which accrued within 45 days prior to the payment are exempt under § (c)(2) from the trustee's avoidance powers.

■ A question remains, however, as to whether the $3,000 in question was actually applied to interest which accrued within 45 days prior to the payment. PCA has submitted the affidavit of Deborah A. Gorter to answer this question. In her affidavit Ms. Gorter states that, *inter alia*, PCA

concerns a change between local and statewide filing units.

received the check for $3,000.00 and applied it to the interest accruing daily on the debtor's loans. She also states that $3,327.89 in interest accrued on a loan in the 45 days preceding receipt of that check. The Trustee has objected to this affidavit, arguing that the application of a payment to the most recent interest is a highly unusual practice, and that any affidavit to that effect should be buttressed with the actual records. PCA has failed to provide those records. The Trustee's points are well taken. Furthermore, although the implication of the affidavit is that the payment was applied to the most recent interest, the affidavit does not affirmatively state as much. The affidavit merely states that the payment was received, it was applied to interest on loans, and that one loan had accrued over $3,000.00 in interest in the prior 45 days. Strictly speaking, nothing in the affidavit is inconsistent with the application of the payment to interest which accrued before the 45 day period. As this is a motion for summary judgment the Court "must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant." *Tee-pak, Inc. v. St. Regis Paper Company,* 491 F.2d 1193, 1195 (6th Cir. 1974) (quoting *Bohn Aluminum and Brass Corporation v. Storm King Corporation,* 303 F.2d 425, 427 (6th Cir.1962)). Therefore, in regard to PCA's motion for summary judgment the Court must assume the payment was applied to interest that accrued more than 45 days prior to the payment.

As to the Trustee's motion, the converse is true. The Trustee has made many arguments as to what the loan documents provide for, usual business practices, etc. However, as those loan documents and the actual loan payment records were not given to the Court, the Court has no way to tell how the payments were applied. Therefore, the Trustee's motion for summary judgment as to the loan interest payment is defeated by the same question of fact, the actual application of the payment received.

### III CONCLUSION

Genuine issues of material fact preclude the granting of summary judgment to either party on either issue under Bankruptcy Rule 7054.